STATE OF MISSOURI *ex rel.* R. F. WINGATE, Attorney-General, Petitioner, *v.* WARREN WOODSON, Respondent.

1. *Constitution — Office — Qualifications.*— The power of the State to declare in its Constitution, or, when that is silent, by legislative enactment, what shall constitute the test of eligibility to office, is as clear and unquestionable as the power to fix the qualifications of voters. (*Ante* Blair v. Ridgely et al., 63.)

2. *Constitution—Jurisdiction—Circuit Courts—Elections—Office.*—The power granted to the Circuit Courts to relieve parties from disabilities imposed by art. 2 of the Constitution confers a special and limited jurisdiction, and the record of, the proceedings must therefore show all the facts which give the jurisdiction : and if this be not done, the judgment of the court will be void. The record must show that the applicant is a resident of the county ; that after committing the acts of disloyalty he voluntarily entered the service of the United States, and was duly sworn and mustered into service under regular military authority ; that he was honorably discharged, and that after his discharge he demeaned himself as a faithful and loyal citizen. Forces organized for home protection were not forces in the service of the United States. HOLMES, J., dissenting upon the latter point, citing *ante* Drehman v. Stifel, p. 184; and holding, also, that the word "sympathy," in art. 2, § 3, of the Constitution, had a peculiar meaning arising out of the history of affairs in this State, and that by it was meant not the feeling of kindness or affection for some individuals engaged in rebellion, but a sympathy with the cause of the rebellion manifested by acts which would be of a treasonable character.

State ex rel. Attorney General v. Woodson.

*Information in the nature of Quo Warranto.*

Attorney-General *Wingate*, and *A. F. Denny*, for State.

I. No person who has done any of the acts specified in § 3, art. 2, State Constitution, is entitled to hold any office of honor, or trust, or profit—*Vide* latter part of § 3, art. 2, Const.

II. The decree of the Circuit Court relieving the defendant from the disability is void. The proceedings being summary and *ex parte* under a special provision of the Constitution prescribing the course to be pursued, that course must be strictly followed, otherwise the proceedings are void— Morton v. Reed, 6 Mo. 73 ; Crooks v. Thurston, 8 Mo. 344; Ruby v. Huntsman, 32 Mo. 501; Thatcher v. Powell, 6 Wheat. 119 ; Young v. Morain, 11 Ills. 636 ; Wallace v. Vigas, 4 Blkfd. 260; The People v. Woodbury, 14 Cal. 43 ; *In re* Underwood, 3 Cow. 59 ; Bloom v. Burdick, 1 Hill, 139; Atkins v. Kinnon, 20 Wend. 249; *Ex parte* Simmonton, 9 Porter, 396–7 ; Wyman v. Mitchell, 1 Cow. 316 ; Black. on Tax Titles, 2d ed., 184; 2 Phill. on Ev. (Cow. & Hill's Notes), 137–48 ; Clapp v. Beardsley, 1 Aiken, 168.

III. The record of the Boone Circuit Court does not show that defendant was a resident of Boone county—§ 23, art. 2, State Const.

IV. The record of the proceedings of the Boone Circuit Court does not show that defendant voluntarily entered the military service of the United States—sec. 23, art. 2, State Const. ; 19 Johns. 7.

V. The defendant being ineligible, the votes cast for him were nullities ; and the party receiving the next highest vote, if eligible, is entitled to the office—§ 3, art. 2, Const. ; § 8, art. 2, Const. ; Cush. Law & Prac. Leg. Assem. 66 ; Gulick v. New, 14 Ind. 93 ; State v. Johnson, 17 Ark. 407 ; Patterson v. Miller, 2 Ky. (Metc.) 493 ; The People v. Vail, 20 Wend. 12.

*Wm. A. Hall*, for defendant.

FAGG, Judge, delivered the opinion of the court.

The questions for consideration in this case arise upon a demurrer to the answer of the defendant.

The information in the nature of a *quo warranto*, filed by the Attorney-General against the defendant, alleges that at a general election held in the county of Boone on the 6th day of November, 1866, one Henry N. Cook was duly elected clerk of the County Court of said county, he having received the highest number of legal votes cast for any one person for that office, and for whom the same could be legally counted; that the defendant on or about the 8th day of January, 1867, did usurp and intrude into said office, and has since that time unlawfully and wrongfully held the same, having no legal authority or commission therefor. It is admitted that the defendant was voted for at said election for that office; but it is charged that by reason of his disloyalty to the Government of the United States, and by failing to take and subscribe the oath of loyalty required by the Constitution of the State, he was ineligible thereto. The answer admits that defendant did take possession of the office, but denies that his act was wrongful and without authority; on the contrary, it alleges that he was duly elected and commissioned as required by law. It is admitted that the defendant sympathized with persons in armed hostility to the Government of the United States, but it is alleged that he was subsequently relieved from that disqualification by a decree of the Circuit Court of Boone county. A copy of the petition and proceedings of the court are attached to and made part of the answer.

It is also averred that, within the time prescribed by law, he took and subscribed the oath required to be taken by candidates for office, except so much as refers to the 3d section of the 2d article of the Constitution. The answer also contains a statement of the facts upon which the defendant claimed to be relieved by the Circuit Court, and upon which the jurisdiction of that tribunal in the premises rested. It

concludes by denying that defendant was bound to take the oath, except in the form in which he did take it, and avers that "all that part of the oath of loyalty referring to the past acts and conduct of the defendant is contrary to the Constitution of the United States and void in this : that it is an *ex post facto* law and a bill of attainder.

The qualifications necessary to hold office are, so far as the question of loyalty is concerned, identical with those prescribed for voters. The same oath is required to be taken in both cases. In the case of Blair v. Ridgely, the question as to whether this provision of the State Constitution is in conflict with the Constitution of the United States was fully considered and determined by this court at its last March term in St. Louis. It will not be necessary therefore to discuss it now, or to restate the reason upon which the decision in that case rests.

The power of the State to declare in its fundamental law, or, when that is silent upon the subject, by legislative enactment, what shall constitute the test of eligibility to office, is as clear and unquestionable as is the power to fix the qualifications of voters ; that point, therefore, may be disposed of by a simple reference to the case just cited. The only remaining point for consideration is the validity of the decree of the Circuit Court by which the defendant claims to have been relieved from a disqualification which his own petition to that court admitted to exist. The Constitution of the State has in cases of this sort conferred upon the Circuit Courts a peculiar and extraordinary jurisdiction. The grounds upon which it is made to depend as well as the manner of proceeding are set out with great minuteness in the Constitution. All of the authorities seem to agree substantially that in such cases the provisions of the law must be strictly followed, or else the action of the court should be held to be illegal and void. The case of Thatcher v. Powell, 6 Wheat. 119, may be regarded as the leading case upon that point; and one that has been uniformly followed by the State courts. Ch. Justice Marshall, in delivering the opinion of

the court, says: "In summary proceedings when a court exercises an extraordinary power under a special statute prescribing its course, we think that course ought to be exactly observed, and those facts especially which give jurisdiction ought to appear in order to show that its proceedings are *coram judice.* Morton v. Reed, 6 Mo. 64; Crook et al. v. Peebly, 8 Mo. 344; Young et al. v. Lorain et al., 11 Ills. 624; Dentler v. State, 4 Blkfd. 258, and Bloom v. Burdick, 1 Hill, 130, may also be referred to as expressly recognizing the same doctrine. The record and proceedings of the Circuit Court, as shown by an attested copy of the same attached to the defendant's answer, fails, as we think, to exhibit the facts necessary to warrant the decree. Following the authorities upon this point, nothing ought to be left to implication or inference. If the necessary facts are not stated in a proceeding of that sort, the court must conclude that they do not exist. It would seem to be required of the applicant to show affirmatively that he was a resident of the county in which his application is made. From the very nature of the case this appears to be a reasonable requirement, imposing no hardship upon the petitioner, and affording an opportunity to persons familiar with his character and deportment to controvert the facts upon which his application may be based. It is, however, not requisite that this requirement should be supported by argument; it is enough to say it is so written, and must be followed. Passing by this point however, and assuming for the sake of the argument that the application and proceedings of the court were in all other respects right and proper, the fact most important of all, and the one absolutely necessary to support the jurisdiction of the court, is not stated. 1st. It should have been sufficiently averred that the petitioner, after the commission of the act of disloyalty, had voluntarily entered the military service of the United States; 2d. That he had been honorably discharged therefrom; 3d. That since his discharge he has demeaned himself in all respects as a loyal and faithful citizen.

The petition, after stating the acts of disloyalty committed by the defendant, proceeds as follows: " That sometime in the summer or fall of 1864 he voluntarily entered the *service of the country* in a company commanded by Capt. James S. Rollins, who was in actual service under the immediate command of Capt. Cary, who was in the United States voluntary service." Such an averment totally fails to meet the requirements of the law. This failure is not cured by a positive averment in any other part of the petition, that the defendant had ever voluntarily entered the military service of the United States. There can be no misunderstanding about the meaning of these words. They exclude the idea of any other kind of service except that performed by a military force regularly sworn and mustered into the service of the United States. The public history of the times justifies us in taking judicial notice of the fact that there were many organizations of the character stated in the defendant's petition—most of them, perhaps, authorized and equipped by officers of the United States. Still it cannot be pretended that forces thus raised for local protection against guerrillas and outlaws, even though they may have incidentally assisted the Government in carrying on its military operations, were in any just sense United States soldiers. This, we apprehend, is the test which the Constitution intends shall be applied to every one seeking to avail himself of the benefits of its provisions. We, of course, have nothing to do with the policy which may have dictated such a requirement in the Constitution. It is the province of the court simply to see that the law is properly interpreted and executed. That can only be said to be done, in cases like this, when its plain and unmistakable provisions are strictly complied with. We conclude, therefore, that there was no sufficient averment of the fact so essentially necessary to support the jurisdiction of the court, and its decree cannot be held to be legal and valid.

The defendant's answer does not contain a statement of facts sufficient to establish his claim to the office in question, and the demurrer must be sustained.

It follows that the defendant Warren Woodson is guilty of usurping and intruding into the office of clerk of the County Court of Boone county, and we accordingly adjudge that he be ousted therefrom.   It is further ordered that he pay the costs of this proceeding.   Judge Wagner concurs.

HOLMES, Judge, delivered the following dissenting opinion.

This case is submitted upon demurrer to the answer.   It is assigned for a cause of demurrer that the record of the proceedings and decree of the Circuit Court of the county of Boone, relieving the defendant from his disqualification, do not show that he had ever committed any of the acts specified in the third section of the second article of the Constitution ; nor that the proceedings were had in the county of the defendant's residence ; nor that he had ever voluntarily entered the military service of the United States, and been honorably discharged; and further, that he had not taken the oath of loyalty as required by the Constitution, and was therefore ineligible to the office.

First, it may be observed, that the petition for relief was somewhat inartificially drawn, and is objectionably indefinite in the forms of expression.   It is for this reason not a little difficult to decide upon its sufficiency.

The cause of disqualification was stated to be "that he had a son and some relatives in the so-called Confederate Government who were .in armed rebellion against the lawful authorities of the Government of the United States, and sympathized with his son and relatives whilst thus engaged." In the third section referred to, the words " or has ever by any word or deed manifested his adherence to the cause of such enemies, or his desire for their triumph over the arms of the United States, or his sympathy with those engaged in exciting or carrying on rebellion against the United States," are introduced in immediate connection with the preceding clauses which specify acts that would clearly amount to treason, and these words, as well by their own import as upon the principle of *noscitur a sociis,* would seem to imply some

conduct of a treasonable character. The word *sympathy* was evidently not used here in its most general sense : it means something more than mere feeling. It is well known that during the late civil war, there was a class of adherents to the rebel cause within this State, who were not openly in arms, but secretly co-operated with the enemy in various ways, giving aid and comfort upon occasion, and who in common parlance came to be called *sympathizers*. The word thus came to have a peculiar meaning in this State, and as such found its way into the Constitution. The wood "bush-whacker" is another example of these local terms having a new and peculiar signification in common speech. *Sympathy with those engaged in exciting or carrying on rebellion*, as the words are here used, must therefore, I think, be understood to import some conduct of a treasonable nature ; and it may fairly be inferred that the petitioner, when he alleged that he had *sympathized* with his son and relatives whilst engaged in armed rebellion against the United States, meant to be understood as using the word in the sense of the Constitution, and as implying treasonable conduct on his part, and not merely a feeling of sympathy for their sufferings or of interest in their welfare. At any rate, the petitioner evidently intended to admit and state that he had done an act which came within the meaning of this third section, and I think he may be taken at his word. It is not averred in terms that the petitioner was a resident of the county of Boone. The Constitution required that he should "in person present his petition to the Circuit Court of the county of his residence"—Art. 2, § 23. I find it stated that "he and a large number of citizens proposed the voluntary organization of a military company of the citizens of Columbia for the purpose of putting down guerrillas," and " did voluntarily organize themselves into a company," &c. We may take judicial notice that the town of Columbia is in the county of Boone, and by a liberal construction this language may be said to import that he and the other members of the company were resident citizens of that town. The provision

seems to refer more especially to the court which is to have jurisdiction in these cases, and not particularly to the facts which were to constitute the foundation of the jurisdiction. No particular stress appears to be laid on the circumstance of residence in reference to the right of the petitioner to have relief. I see no other reason why the proceeding should necessarily be had in the county of his residence than that the enactment provides that it may be had in that county, and has not expressly said that it may be had in any other county. It may look to the convenience of the party himself, since it may be supposed that his evidence would be more easily produced in the county of his residence. It is purely an *ex parte* proceeding. No adversary party is contemplated and no notice is required to be given to any other person ; not even to the circuit attorney as representing the county or the State. The whole matter is to be submitted to the court on the petition and the proofs adduced by the party himself. I am inclined to think it sufficiently appears by the record that the proceeding was had in the county of the defendant's residence.

The other objection on which the greater stress is laid respects the averment of military service. The Constitution required only that he should " have voluntarily entered the military service of the United States—Art. 2, § 28. The allegations were that " in 1864 he voluntarily entered the service of the country in a company commanded by Capt. J. S. Rollins, who was in actual service under Capt. Cary, who was in the United States voluntary service, and served and performed all the duties required of him as a soldier in the service of the United States until he was honorably discharged from service as aforesaid"; and further, that " in the spring of 1865 he was a member of a voluntary organization of a military company of the citizens of Columbia for the purpose of putting down guerrillas in the name of the United States and in pursuance of orders made by the commanders of United States forces in the Department of Missouri and under the command of Capt. N. J.

Harbison, which was armed and equipped by procuring arms and ammunition from the United States arsenal, and was mustered and held ready to march at the call of the department commander; and that he belonged unto said organization until after the guerrillas and regular Confederate forces had surrendered to the army of the United States; and that he had during his said terms of service, and ever since, demeaned himself as a faithful and loyal subject of the Government of the United States."

There is some lack of precision in the form of these statements, but, giving them a fair interpretation, I do not well see how they can be held to amount to anything less than a substantial averment that he had voluntarily entered the military service of the United States and been honorably discharged. The facts so stated must be taken as true so far as this objection is concerned. No particular branch or kind of service is specified in this enactment. It is not necessarily to be service in the regular army, nor a formal enlistment for any given period of service in the volunteer forces. The kind of service, or the time of service, or the manner of enlistment, is not the material thing. It was evidently contemplated by the Constitution that as the disqualification was to arise from some act of treason, or disaffection, the removal of the disqualification when once incurred should be made to depend upon the simple fact that the party had since voluntarily entered the military service in the cause of the Union. This fact alone, when proved to the satisfaction of the court having jurisdiction, is assumed by the law to be enough to show that the party had returned to his allegiance, and was again ready and willing to perform all the duties of a loyal citizen. The Constitution was framed before the war ended, and it may reasonably be inferred that one object of this provision was to furnish an inducement to such persons to abandon the rebellion and adhere to the cause of the Union. It may be supposed that another object was to obviate the manifest injustice that would be done to meritorious soldiers who had voluntarily served in the ar-

mies of the country, though they had been previously implicated in the rebellion, and had thus given evidence of their return to loyalty and duty, by subjecting them to a deprivation of the common rights and privileges of citizenship.

The allegations necessarily import that he was a volunteer in the military service of the United States, in a company that was raised, armed, equipped, and commanded under the authority of the Government, and that the company was a part of the United States forces, and was employed in military operations against the public enemy. I do not see but that a volunteer service in such a force may afford satisfactory evidence that the party had returned to his allegiance and become a loyal citizen; though if he had enlisted in the regular army, or in some corps organized for a longer term of service, his conduct might have been still more creditable.

In the case of Drehman v. Stifel, March term, 1867, (ante p. 184,) this court held that volunteer regiments of Home Guards, called into service by authority of the United States, armed and equipped from the arsenal at St. Louis, and acting under the orders of the commander at that post, were a lawfully military force engaged in the military service of the United States.

These considerations, I think, sufficiently show that the military service alleged was such as to answer the strictest terms of the law, and that it came within the spirit and policy of this special enactment.

The court was acting under a special jurisdiction. The judgment is not conclusive of the jurisdiction; the record may be looked into for the facts which confer the power and show that it was lawfully exercised; and every requisite that was essential to give jurisdiction must appear upon the face of the record, or the judgment will be regarded as a nullity. —Grignon v. Astor, 2 How. (U. S.) 341; Patterson v. Fagan, 38 Mo. 81. Where the statute gave power to order a sale only upon the report of the sheriff on certain publications being made, it was held that the report gave the jurisdiction, and that without it the matter was *coram non judice,*

16—VOL. XLI.

and the court was powerless—Thatcher v. Powell, 6 Wheat. 119. In this case it cannot be said that the necessary facts were wholly wanting. The essential facts were that the petitioner had done some one of the acts specified in this third section, and that he had subsequently volunteered in the military service of the United States and served until honorably discharged. I think that these facts sufficiently appear on the face of the record; that they were enough to show that the proceeding was *coram judice*, and that the court had power and jurisdiction over the subject-matter and over the person. This being so, the decree was conclusive upon the merits of the case.

On the whole, my conclusion is that the defendant was relieved from his disqualification; that the oath which he took was all that was required of him by the 24th section of the 2d article of the Constitution; and that he was lawfully entitled to hold the office.

Such being my view of the matter, the question of the constitutionality of the oath of loyalty is not essential to the determination of the case, and I see no useful purpose to be answered by my entering upon the consideration of that subject. Whenever that question shall again come directly in judgment I shall be ready to re-examine it with freedom and candor, and upon the best lights which may be then before me. For these reasons I dissent from the opinion of the majority of the court.