### THE STATE OF INDIANA, EX REL. WORKMAN ET AL., *v.* GOLDTHAIT, AUDITOR.

[No. 21,140.   Filed February 16, 1909.   Rehearing denied April 22, 1909.]

1. COUNTIES.—*Appropriations.—Percentage Contracts.—Tax Ferrets.*—That the exact amount of money to be paid under a contract for discovering and listing for taxation omitted property cannot be determined in advance, constitutes no ground for holding that an appropriation by the county council need not be made therefor, since an appropriation for the approximate amount needed is all that is ordinarily required, another section (§5938 Burns 1908, Acts 1907, p. 332, §2) applying to extraordinary conditions.   p. 215.

2. COUNTIES.—*Contracts.—Appropriations.—Statutes.*—The county reform law (§§5594g-5594e2 Burns 1901, Acts 1899, p. 343), requiring appropriations to be made by county councils for all amounts paid out, does not repeal, and is not in conflict with, §6016 Burns 1908, §5766 R. S. 1881, prohibiting boards of commissioners from employing persons to perform official duties.   p. 216.

3. OFFICERS.— *Constitutional.— Boards of Commissioners.*— The office of county commissioner is not a constitutional office.   p. 216.

4. COUNTIES.—*Boards of Commissioners.—Contracts.—Statutes.*— The power of the boards of commissioners to contract is wholly statutory, but they have implied discretionary administrative functions.   p. 216.

5. COUNTIES.— *Relations to State.— Corporations.*— Counties are local subdivisions of the state, and their powers are wholly statutory; and the fact that the boards of commissioners are made corporations does not enlarge their powers.   p. 217.

6. COUNTIES.—*Reform Law.—Method.—Exclusiveness.*—The manner of conducting county business prescribed by the county reform law (§§5594g-5594e2 Burns 1901, Acts 1899, p. 343) is exclusive.   p. 217.

7.  OFFICERS.—*Constitutional.—County Councilmen.—Qualifications.*
—The office of county councilman not being a constitutional
office, the legislature may prescribe the qualifications required
for holding same.  pp. 218, 220.

8.  OFFICERS.— *Qualifications.— Right of Suffrage.—* Citizens have
no inherent right to vote or to hold office, and the statutory con-
ditions therefor, whether constitutional or statutory, must be
complied with.  *State, ex rel.,* v. *Denny,* 118 Ind. 449, limited.
p. 218.

9.  OFFICERS.— *Qualifications.— Constitution.—Statutes.—*The legis-
lature cannot impose qualifications for holding office in addition
to those prescribed by the Constitution.  p. 218.

10.  OFFICERS.—*Qualifications.—Constitutional.—Statutory.—*Though
the constitutional qualifications for holding office cannot be
abridged nor added to, yet where the Constitution is silent the
legislature can prescribe the desired qualifications.  p. 220.

11.  CONSTITUTIONAL LAW.—*Holding Office.—Voting.—*So long as
the legislature does not abridge an elector's constitutional right
to vote and to hold office, it may create whatever offices are de-
sired and prescribe the method of filling them.  p. 220.

12.  OFFICERS.—*Qualifications.—County Assessors.—*The legislature
may prescribe the qualifications for county assessors.  p. 221.

13.  STATUTES.— *Valid in Part.— County Councilmen.— County
Assessors.—Qualifications.—*Even though the qualifications pre-
scribed for county councilmen and county assessors should be
held invalid, the remainder of the statutes creating such offices
would be valid.  p. 221.

14.  ESTOPPEL.— *Contracts.— Counties.— Receipt of Money.— Tax
Ferrets.—*The county's receipt of money collected by virtue of
work done by a "tax ferret," under a contract with the board
of commissioners, does not estop the board from denying the
validity of such contract.  p. 221.

15.  TAXATION.—*Omitted Property.—County Assessors.—Duties.—*
It is the duty of county assessors to examine the papers and
records of all county officers and place on the tax duplicates all
omitted or sequestered property for the past years as well as
for the current year.  p. 222.

16.  OFFICERS.—*Duties.—Contracts for Others to Perform.—County
Assessors.—Tax Ferrets.—*Contracts between the boards of com-
missioners and "tax ferrets" for the performance of the identical
duties required of county assessors in the discovery and listing of
omitted property for taxation, are void.  p. 223.

17.  COUNTIES.— *Appropriations.— Contracts.— Tax Ferrets.—* Con-
tracts between the boards of commissioners and "tax ferrets" are
void unless appropriations have been made therefor by the county
councils.  p. 225.

18. COUNTIES.— *Contracts.— Tax Ferrets.*— Where the board of commissioners has contracted with "tax ferrets" to discover and list for taxation omitted property, which it is not the statutory duty of the county assessor to discover and list, the compensation for such work must be paid out of the treasury the same as other claims against the county. p. 225.

From Howard Superior Court; *Joseph Claybaugh,* Special Judge.

Action by The State of Indiana, on the relation of Joseph B. Workman and another, against Harry Goldthait, as auditor of Grant county. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*John W. Kern, G. A. Henry, C. C. Shirley, James E. Truesdale* and *Charles E. Thompson,* for appellant.

*Brownlee & Cline,* for appellee.

MYERS, J.—Appellant's relators instituted this action against appellee, auditor of Grant county, for a writ of mandate to compel the latter to issue to them a warrant upon the treasury of that county for $695, in payment of a claim which had been allowed to them by the board of commissioners of that county, under and pursuant to a contract of employment to search in Grant and other counties in Indiana, and in other states for, and report to the proper officers, omitted, unassessed taxable property. Appellee answered that relators, on May 3, 1905, entered into a written contract with the Board of Commissioners of the County of Grant, which was spread of record, whereby the latter, after entering upon its record that an indispensable public necessity existed for relators' employment, "authorized, directed and employed relators to make a careful and diligent search and investigation to discover omitted, unassessed taxable property, and to report the same to the proper officers of said county for assessment, taxation, and entry upon the tax duplicate;" that relators were to be "paid a sum of money equal to thirty-five per cent of all moneys collected by the county treasurer, as a result of their investigation," and that

they should be paid by "said county treasurer, upon their filing with the board a statement duly verified showing the names of those assessed, the amount of property, the taxes thereon, and the amount collected by the county treasurer since said last report, and the amount owing to said Workman and Higgs, said per cent to be deducted from the gross amount so collected and paid to said Workman and Higgs, all in conformity with §§6016, 10271 Burns 1908, §5766 R. S. 1881, Acts 1905, p. 15;" that on June 22, 1905, relators filed a verified itemized statement with the auditor of said county in the form of an account, showing the collection of $1,985.82, and claiming as due them thirty-five per cent of said amount, or $695; that an affidavit was attached, showing that the claim was made under contract; that on July 5, 1905, the board of commissioners made an order reciting the collection by the treasurer of $1,985.82, upon discovery and report and causing the same to be collected by relators under said contract, and entered an order allowing them $695, as per the claim filed, and directed the auditor to issue to them a warrant against said gross sum of omitted taxes so collected by the county treasurer, and the treasurer of Grant county was authorized and directed to pay said warrant out of the gross amount of omitted taxes then in the county treasury, said warrant to be issued and paid in the manner as such warrants are issued and paid to the state treasurer and township trustees, for moneys due to them from the collection of taxes; that the contract mentioned in the claim and in the finding, and the order of allowance and the contract mentioned in the amended complaint and the alternative writ, were one and the same contract; that the indebtedness mentioned in the amended complaint and alternative writ is the same indebtedness as in the claim set forth and allowed, and relators never filed any other claim; that the services rendered and claimed for were all rendered in Grant county, and consisted in making an examination of the tax duplicates of said county and other records and pa-

pers in the offices of auditor, treasurer, recorder, clerk, sheriff and surveyor of said county, and examining the returns of real and personal property made to the auditor by the assessors of the several townships, and the assessment lists, schedules, statements, maps and other books and papers filed with said auditor, and in furnishing to the county assessor the information obtained by said examination relative to omitted property; that more than $390 of the $695, for which appellants make claim, is for and on account of personal property omitted from the tax duplicate for the years 1893-1904, inclusive, and since the creation of the office of county assessor, and all the services rendered and charged for and allowed were the services before described, and none other than the county assessor was required to do and perform, and that, during all the time that relators were performing the things set forth, there was a duly elected, qualified and acting county assessor of the county, who in the discharge of his duties might have performed all the things done and services rendered by relators; ''that at and before the making of the alleged contract  *  *  *  no appropriation was made by the county council of said Grant county, Indiana, nor has any appropriation been made by said county council at any time since the making of said contract, nor does any appropriation now exist for the payment of the services and things to be done and stipulated to be performed by the terms of said contract, or for the payment of any services of the kind or character described and set forth in the amended complaint, and in the alternative writ of mandate, nor for the payment of the claim filed and allowed as aforesaid, alleged to have been performed by the relators herein; that no appropriation now exists of any amount of money to pay for the services and indebtedness mentioned,  *  *  *  nor had any appropriation been made, nor did any exist at the time of the commencement of the action, nor at any time prior thereto or since, out of which the claim or any part of it could be paid, or against which defendant could

draw a warrant demanded in the complaint and writ, or out of which said warrant could be paid by the treasurer.''

A demurrer by relators to this answer for want of facts to constitute a defense was overruled. Relators refused to plead further, and judgment was rendered against them, and they appeal and assign error on such ruling. It is contended by relators that no appropriation by the county council was necessary to make the contract valid: (1) Because, being a percentage contract, no estimate of the expense of carrying it into effect could be made; (2) that, notwithstanding the county reform act (Acts 1899, p. 343, §§5594g-5594e2 Burns 1901), the contract was valid under the independent powers conferred by §6016, *supra;* (3) that if the county reform act is in conflict with §6016, *supra,* the reform act is unconstitutional, by reason of the qualifications imposed for eligibility to the office of county councilman; (4) as to that part of the answer which raises the question of relators' being employed to discharge the duties of the county assessor, the act, with respect to the duties and qualifications of county assessors, is unconstitutional, because of the qualifications imposed by the act as to the eligibity to that office; (5) that under the provisions of the act of 1905, *supra,* no appropriation is necessary to be made by the county council, for the reason that the statute itself makes the appropriation, in requiring to ''be deducted from the gross amount of said taxes so collected the total cost and expense of such investigation and collection, and the remainder shall be distributed pro rata among all the funds entitled to receive the same;'' (6) that equity will interpose to charge a fund with the expense of acquiring or preserving it.

As to the first proposition we see no more difficulty with respect to making appropriations for carrying percentage contracts into effect than in any other class of contracts which may arise. This act, like any other, must receive a reasonable and practicable construction, in view of the purposes of its enactment. It is not con-

templated that an appropriation shall be made which shall be the exact amount needed in any department; that is impracticable. The statute requires only an estimate or approximation of the amount of money required for any branch of the county government. §5933 Burns 1908, Acts 1899, p. 343, §16.

In practical administration we know this must be so. Unusual conditions or circumstances must be taken into account. For example, unprecedented floods which may sweep away bridges or destroy highways, fire which may destroy a courthouse, or the buildings of county institutions, may call for a large expenditure of money which could not be expected or form any basis for an estimate of the expenses of maintaining the highways or the institutions, so that the estimate, particular though it may be, must be made in the light of the best judgment as applied to ordinary circumstances or conditions. To extraordinary conditions another section applies. §5938 Burns 1908, Acts 1907, p. 332, §2. So with respect to such contracts as the one before us, there is nothing impracticable in requiring an estimate and appropriation, any more so than in most, if not all, other instances where an estimate and appropriation are required.

As to the second proposition we think the learned counsel for relators are in error. There is no repugnancy between §6016, *supra,* and the reform act (Acts 1899, *supra*).

2. They may be considered together and taken as parts of one system, and we think they must be taken to supplement each other. It must be borne in mind that the office of county commissioner is not a constitutional office, and never has been. In the adoption of the new Constitution, county boards were recognized as agents in the public business. R. S. 1843, p. 181; Const., Art. 6, §10. While they have extensive administrative functions with respect to which they may have implied and discretionary powers, they have no such powers in their governmental contractual relations. They are lim-

ited governmental agents, and must find their powers in their governmental contractual relations and capacity, by virtue of some statute.   Counties are local subdivisions of the State, created by the sovereign power of the State, of its own

5.   sovereign will, for governmental purposes, without the particular solicitation, consent or concurrence of the inhabitants of the county, and their powers are limited, and must be exercised in the manner provided by statute. *Myers* v. *Gibson* (1897), 147 Ind. 452; *State, ex rel.,* v. *Hart* (1896), 144 Ind. 107, 33 L. R. A. 118; *Gavin* v. *Board, etc.* (1885), 104 Ind. 201; *Board, etc.,* v. *Allman* (1895), 142 Ind. 573, 39 L. R. A. 58.   That such boards of commissioners are by statute made corporations does not change the conditions or the results, or enlarge their powers. The purpose of investing them with corporate powers was evidently not thereby to extend their powers, but to create a legal entity, the better to further the purposes of their creation.   Besides, they are expressly restricted in their functions to matters not inconsistent with the provisions directing their exercise of powers.   §5974 Burns 1908, §5735 R. S. 1881.

"Considered with respect to their corporate powers, counties rank low down in the scale of corporate existence, and are frequently termed *quasi*-corporations."   *State, ex rel.,* v. *Hart, supra.*   The county reform law (Acts 1899, *supra*) and §6016, *supra,* considered together, as they should be, simply require that contracts entered into under said §6016 should conform to the provisions of the county reform act, and thus both statutes be given efficacy.   This construction does not strike down the discretionary powers of boards of commissioners, but the discretion must be exercised in

6.   a defined way.   It is the manner of the exercise that the reform act directs, and that manner is exclusive. The right is purely statutory, and the manner of its exercise by its own agent, the State may in its discretion control.

It is claimed that the county reform act is unconstitu-

tional, in that it requires special qualifications for eligibility to the office of councilman, in that no person is eligible thereto while holding any state, county, township or municipal office, or who is not a qualified voter and resident freeholder of the county; or, in case other than a councilman at large, who is not a qualified voter and resident freeholder of the district from which elected or appointed. §5921 Burns 1908, Acts 1899, p. 343, §4.

The office of county councilman is not a constitutional office. Being a creation of the statute, the legislature may impose such conditions of eligibility as it sees proper.

7. It may change the term, so that it is not extended beyond four years, and also the conditions of eligiblity, or abolish the office entirely. *State, ex rel.,* v. *Menaugh* (1898), 151 Ind. 260, 43 L. R. A. 408; *State, ex rel.,* v. *Bogard* (1891), 128 Ind. 480; *State, ex rel.,* v. *Bell* (1888), 116 Ind. 1.

There is no constitutional or inherent right to hold office, or in citizens to vote. They are political privileges, and the conditions of office holding and of voting must be com-

8. plied with. If prescribed by the Constitution they cannot be abridged; if not, the legislature may prescribe them. Mechem, Public Officers, §§64, 66, 145; Paine, Elections, §§2, 7; *Parvin* v. *Wimberg* (1892), 130 Ind. 561, 15 L. R. A. 775, 30 Am. St. 254; *Hovey* v. *State, ex rel.* (1889), 119 Ind. 386, 391; *Huber* v. *Reily* (1866), 53 Pa. St. 112.

The General Assembly cannot impose qualifications upon officers beyond those prescribed by the Constitution.

9. *State, ex rel.,* v. *McAllister* (1893), 38 W. Va. 485, 489, 18 S. E. 770, 24 L. R. A. 343, 345; *Darrow* v. *People* (1885), 8 Colo. 417, 420, 8 Pac. 661; *State, ex rel.,* v. *Covington* (1876), 29 Ohio St. 102, 117; *Mason* v. *State, ex rel.* (1898), 58 Ohio St. 30, 54, 50 N. E. 6, 41 L. R. A. 291; *People, ex rel.,* v. *May* (1855), 3 Mich. 598; *Attorney-General* v. *Abbott* (1899), 121 Mich. 540, 546,

80 N. W. 372; *State, ex rel.,* v. *Dunn* (1875), 73 N. C. 595, 606; *State, ex rel.,* v. *Woodson* (1867), 41 Mo. 227, 230; *State, ex rel.,* v. *McSpaden* (1897), 137 Mo. 628, 635, 39 S. W. 81; *State, ex rel.,* v. *Von Baumbach* (1860), 12 Wis. *310, *312; *Fordyce* v. *State, ex rel.* (1902), 115 Wis. 608, 614, 92 N. W. 430; *Territory, ex rel.,* v. *Stubblefield* (1897), 5 Okla. 310, 319, 48 Pac. 112; *Sheehan* v. *Scott* (1905), 145 Cal. 684, 79 Pac. 350, 351; *State, ex rel.,* v. *Dillon* (1893), 32 Fla. 545, 569, 14 South. 383, 22 L. R. A. 124; *State, ex rel.,* v. *Bryan* (1905), 50 Fla. 293, 376, 39 South. 929; *State, ex rel.,* v. *Huegle* (1907), 135 Iowa 100, 101, 112 N. W. 234; *Shaw* v. *City Council, etc.* (1906), 131 Iowa 128, 104 N. W. 1121, 10 L. R. A. (N. S.) 825, 829.

The case principally relied on by relators as showing the county reform law to be invalid is *State, ex rel.,* v. *Denny* (1889), 118 Ind. 449, 4 L. R. A. 65. An examination of that case discloses that it turned upon the question of the right of local self-government, and was so understood and intended by the court. It is true that in the reasoning in that case, upon the abstract proposition, the court makes some declarations touching the right to hold public office as a right which belongs to every voter, etc., but it is evident that the statement is too broad, as an abstract proposition, and that it was not controlling in the case is shown in *Hovey* v. *State, ex rel.* (1889), 119 Ind. 386, 391, where the court said: "Offices of the class under immediate mention are not such as every elector may justly claim a right to hold solely on the ground that he is a voter and all voters are entitled to hold offices, but they are offices which the legislature may restrict to competent persons by prescribing what shall be the qualifications of those who enter them. It is within the authority of the legislature, by virtue of its general power, to require that the officers of this class shall be selected from different political parties, or that they shall be persons of peculiar skill and experience."

The true distinction is that as to constitutional offices, and where the qualifications of officers are defined by the Constitution, no other qualifications can be imposed; but that is not true as to offices of purely legislative creation, where the Constitution is silent as to qualification. The only constitutional suffrage qualification is that found in article 2, §2, of the Constitution. The legislature is supreme, except as limited by the Constitution.

Various qualifications for office holding are prescribed by the Constitution as to different offices. We have also a constitutional provision that "such other county and township officers as may be necessary shall be elected or appointed in such manner as may be prescribed by law" (Const., Art. 6, §3), and "no person shall be elected or appointed as a county officer who shall not be an elector of the county" (Const., Art. 6, §4).

The Constitution has committed to the legislature the right to determine what offices shall be created, and how filled, and the Constitution is not violated so long as the elector is not deprived of his constitutional rights to vote and to hold office so far as the Constitution has defined them.

"Where the Constitution contains no negative words to limit the legislative authority in this regard [qualifications of election or appointment to office], the legislature in enacting a law must decide for itself what are the suitable, convenient, or necessary agencies for its execution." Cooley, Const. Lim. (5th ed.), *115, note.

It seems eminently fitting that the legislature, in creating a county council as a direct arm of the government in its administrative branch, should impose qualifications for the incumbents of an office of its own creation, though it be powerless to impose such or any qualifications as to constitutional offices in its power to determine the necessary, suitable, qualified and convenient agencies.

What we have said as to the validity of the county reform act applies to the office of county assessor, respecting the statutory qualifications for eligibility.

So far as county councilmen are concerned, even if we were to concede the statute to be invalid as to that part of it requiring that they shall be "resident freeholders" of the county, which is the only objection urged, the act would be perfectly reasonable and capable of enforcement by eliminating the words "resident freeholders." The whole of section four (§5921 Burns 1908, Acts 1899, p. 343) could be eliminated, and the statute remain effective. So, too, with respect to the county assessor, the requirement that he shall be a freeholder, and four years a resident of the county, might be eliminated, and the act remain perfect, and in each instance, the constitutional requirement that they be electors would be the only qualification necessary.

We are not able to perceive any ground of objection to the validity of these acts.

There is nothing here upon which to ground an estoppel by the county's receiving the money; no question of equitable cognizance with respect to enforcing payment from a fund in obtaining or preserving it—because (1) relator's claim is grounded on a matter of simple contract; and (2) no estoppel can grow out of dealings with public officers of limited authority. *Hord* v. *State* (1907), 167 Ind. 622; *Daily* v. *Board, etc.* (1905), 165 Ind. 99; *Lee* v. *York School Tp.* (1904), 163 Ind. 339; *Moss* v. *Sugar Ridge Tp.* (1903), 161 Ind. 417.

The answer in question sets out in detail the services performed by relators, and discloses that they consisted of the same services required by statute of county assessors. §10277 Burns 1908, Acts 1891, p. 199, §113. Relators claim that the county assessor is not charged with the duty of searching for omitted or sequestered property. In support of this contention, they cite the cases of *City of Richmond* v. *Dickin-*

*son* (1900), 155 Ind. 345, *Board, etc.,* v. *Dickinson* (1900), 153 Ind. 682, and *Fleener* v. *Litsey* (1903), 30 Ind. App. 399.

An examination of the statute discloses that, in addition to the same powers conferred upon county auditors and treasurers, as to putting on the tax duplicates omitted or sequestered property when brought to their attention, county assessors are required to examine the records and papers of the various county offices and the returns, etc., and list and assess all omitted property. §§10277, 10310, 10353 Burns 1908, Acts 1891, p. 199, §§113, 182, Acts 1897, p. 141, §1.

But relators contend that the assessor is not required to search for years other than the then current year. This court has held that he has the right to go back of the current year, though it is not there held to be his duty (*Saint* v. *Welsh* [1895], 141 Ind. 382) ; and that when the tax is put upon the duplicate it is current tax (*Gallup* v. *Schmidt* [1900], 154 Ind. 196). If, therefore, the assessor has the right to go back of the current year to search for omitted property, and if when taxed and put upon the duplicate it is current tax, or under the theory of the cases is for the first time a tax, it must follow, and we hold, that it is the statutory duty of the county assessor to go back of the current year, and search for omitted property, which, when assessed, he assesses as the current year's taxes, and this was the manifest intention of the statute in imposing upon county assessors entirely different duties from those imposed on auditors and treasurers.

It cannot be presumed that the legislature intended a useless and meaningless thing when it defined the duties of county assessors, and specially committed to them the duty of searching for omitted taxes. That duty is a retrospective one, for we have seen that it is held that they may go back of the current year in that search, and, if they may do so, then in the public interest that amounts to a mandate that they shall do so. It would be an anomaly to say that they

may do so, but are not obliged to do so.    Mechem, Public Officers, §593.    *City of Logansport* v. *Wright* (1865), 25 Ind. 512.    Or, take another case:    Suppose the officer in his examination discovers that there has been property omitted in former years, will it be contended that he has any choice in the matter?    Is it not perfectly clear that he is bound to assess it, and put it upon the duplicate?    He can have no choice as against his plain duty. His duty is mandatory, and he can waive nothing of that duty, as against the public interest, and against public policy.    *State, ex rel.,* v. *Haworth* (1890), 122 Ind. 462, 7 L. R. A. 240;    *City of Indianapolis* v. *McAvoy* (1882), 86 Ind. 587;    *Board, etc.,* v. *Benson* (1882), 83 Ind. 469;    *City of Logansport* v. *Wright, supra;* 29 Cyc., 1432.

It is urged that the work requires peculiar knowledge and skill.    We are not prepared to assent to that proposition, but, even so, it only argues the selection of qualified officers, or the abolition of this duty on the part of county assessors and the imposition of it elsewhere.    Nor do we mean to be understood as holding that there may not be cases where, by reason of being out of his jurisdiction, or for other reasons, a county assessor would not be required to make examinations, where his duty would not require him to go, and this seems to be implied by the statute as a limitation to the records, papers, maps, returns, etc., of the county.    But what we do hold is that the examination for and assessing of omitted property is committed to and is the duty of the county assessor.    The answer discloses that the same services, setting them out in detail, were performed by relators as are required of the county assessors, and it is settled that this may not be contracted to be done by third persons, as a matter of public policy, and that such contract is *ultra vires.*    The Constitution (Art. 6, §6) provides that county officers shall "perform such duties as may be directed by law."    *City of Richmond* v. *Dickinson* (1900), 155 Ind. 345;    *City of Ft. Wayne* v. *Lehr* (1882), 88 Ind.

62; *Miller* v. *Embree* (1882), 88 Ind. 62; *Vandercook* v. *Williams* (1886), 106 Ind. 345; *Stevens* v. *Henry County* (1905), 218 Ill. 468, 75 N. E. 1024, 4 L. R. A. (N. S.) 339; *Brome* v. *Cuming County* (1891), 31 Neb. 362, 47 N. W. 1050; *Platte County* v. *Gerrard* (1882), 12 Neb. 244, 11 N. W. 298; *House* v. *Los Angeles County* (1894), 104 Cal. 73, 37 Pac. 796; *Grannis* v. *Board, etc.* (1900), 81 Minn. 55, 83 N. W. 495; *Storey* v. *Murphy* (1899), 9 N. Dak. 115, 81 N. W. 23; *Daugherty* v. *Austin* (1892), 94 Cal. 601, 28 Pac. 834, 29 Pac. 1092, 16 L. R. A. 161; *Romero* v. *United States* (1889), 24 Ct. Cl. 331. Nor is this view in conflict with the cases relied on by relators.

In *Board, etc.,* v. *Dickinson, supra,* but one question was determined, and that was that the remedy by injunction was improper. The case of *City of Richmond* v. *Dickinson, supra,* has no relevancy, for the reason that the case turned on the fact that there were no officers of the city required to search for omitted property.

The case of *Garrigus* v. *Board, etc.* (1901), 157 Ind. 103, is based upon the fact that there was no duty imposed upon the board of commissioners to perform the services contracted for, and it does not appear that they were such as were imposed upon any other officer.

The case of *Fleener* v. *Litsey, supra,* is based upon the proposition that the contract was to "discover secreted property in Parke, and other counties," and that duty was not imposed upon the taxing officers. We cannot assume that the question here presented as to the duties of a county assessor was presented in that case. It is not adverted to in the opinion, which seems grounded wholly upon the duty of the auditor and treasurer to place on the duplicate taxable property which has come to their knowledge, or concerning which they shall receive credible information, and that the statute imposes no duty upon them to search for omitted property, and hence a contract with others to perform that service was there held valid. That is not the question here presented,

for the answer alleges an employment for, and performance of the identical duties required by statute of the county assessor, and for services wholly performed in that county.

We come to the last question raised, and that is that this court was in error in its decision in *State, ex rel.,* v. *Parks* (1907), 169 Ind. 93, in holding that the county reform act must be followed with respect to contracts made under §6016 Burns 1908, §5766 R. S. 1881, and that appropriations must be made in order to authorize a warrant to be issued, and in holding that under the act of 1905 (Acts 1905, p. 15, §10271 Burns 1908), an appropriation is necessary, upon the theory that the law makes the appropriation by the requirement that ''there shall be deducted from the gross amount of said taxes so collected the total cost and expense of such investigation and collection and the remainder shall be distributed pro rata among all the funds entitled to receive the same.'' This contention is based upon the claim that in *Garrigus* v. *Board, etc.* (1901), 157 Ind. 103, it was held that §6016, *supra,* was not repealed by the fee and salary act of 1891 (Acts 1891, p. 424), and in *Board, etc.,* v. *Garrigus* (1905), 164 Ind. 589, that §6016, *supra,* was in force, and in *Fleener* v. *Litsey, supra,* that it is not the duty of taxing officers to search for taxes, and that contracts with third persons therefor are not invalid, and that these decisions, taken with said act of 1905, could mean nothing, unless it be to take the entire subject out of the operation of the county reform act.

We have again gone carefully into the matter, in view of the urgent request of counsel. We are not prepared to say that there may not be cases in which a contract for the listing and assessing of taxes upon omitted property may not be made, which would involve services other than those any of the county officers are required to perform, and there is, therefore, that reason for holding that said §6016 is in force; but counsel entirely mistake the

reason for the passage of said act of 1905, as we understand it. The so-called ferret contracts had been upheld, and in *Fleener* v. *Litsey, supra,* it was held that the county was primarily liable for the full amount of the contract price. It will thus be seen that without legislative enactment it may, in the legislative mind, have been doubtful, whether the State or other recipients could be compelled to contribute any portion of the expense which it was clearly equitable that it or they should contribute, and throw the whole burden on the county. The act was passed for the purpose of reimbursing the county. Clearly it was never intended that the county reform act should be affected by this act, but, as was said in *State, ex rel.,* v. *Parks, supra,* it was designed to apportion the expenses equitably, and in proportion to the various funds affected, and its provisions are in entire accord with the county reform act (Acts 1899, p. 343, §§5594g-5594e2 Burns 1901) and §6016, *supra.*

The terms of relators' contract provide that the taxes assessed shall be covered into the treasury, and the provisions of the act expressly recognize that the taxes shall be collected before payment. How are they collected? Certainly the same as other taxes. They are in the treasury, and the auditor is expressly forbidden, under severe penalty, from issuing a warrant against the treasurer where no appropriation has been made. The allowance by the board is of no consequence as against a specific statute, and it is the duty of an auditor in such case to disregard it. *State, ex rel.,* v. *Perry* (1902), 159 Ind. 508; *Gross* v. *Board, etc.* (1902), 158 Ind. 531, 58 L. R. A. 394; *Sudbury* v. *Board, etc.* (1901), 157 Ind. 446.

There is no difficulty in the practical application of the act, and there is every reason for the application of the county reform act to such contracts. Where an appropriation is made, and payment made from the fund so appropriated, the county is simply reimbursed for the proportion paid out for the other beneficiaries in the fund, and this was and is the sole purpose of that act.

The court is keenly alive to the evils of the escape of property from its just burdens of taxation, but it cannot trespass upon a coördinate department in any attempt by judicial legislation to carry out any ideas it may entertain upon the subject.

We think there is no error in the record, and the judgment is affirmed.