BUCK ET AL. *v.* INDIANA CONSTRUCTION COMPANY.

[No. 11,467. Filed March 6, 1923.]

1. PLEADING.—*Complaint.*—*Motion to Make More Specific.*—In an action for an injunction, a motion to make the complaint more specific was properly overruled, where the matters the motion asked to be stated and set out in the complaint did not relate to any allegations therein contained, but called for matters in defense. p. 331.

2. COUNTIES.—*Relation to State.*—*Corporations.*— A county is not to be considered as a municipal corporation, but is a civil division of the state for judicial and political purposes, created by the legislature without any particular solicitation, consent, or concurrent action on the part of the people, and is nothing

more than a territorial subdivision, treated as a body corporate only for certain specified purposes, and is usually considered to be no more than a *quasi* corporation.   p. 336.

3.  COUNTIES.—*Highway Improvements.—Breach of Contract.— Damages.—Recovery.*—Boards of county commissioners, in improving public highways and entering into contracts for that purpose, are not acting as agents of a municipal corporation, but are by statute acting as agents of the state, and, in the absence of a statute, no action can be maintained against such a board for damages because of a breach of such a contract. p. 337.

4.  INJUNCTION.— *Acts of Board of County Commissioners.— Right to Injunctive Relief against.*—Boards of county commissioners are bodies of limited power and jurisdiction, and when acts done by them are within the powers conferred and have been performed in good faith, courts will not interfere with or control their acts, especially where they involve the exercise of discretion, but if such boards exceed the limits of their power and their acts are of a nature to warrant an injunction, it will be granted against them.  p. 337.

5.  INJUNCTION.—*Right to Writ.—Correction or Control of Acts of Public Officials.*—The exercise of discretionary powers vested by law in municipal corporations is not subject to judicial control, except in cases where fraud is shown or the discretion is being grossly abused to the oppression of the citizen; and equity possesses no power to revise, control or correct the action of public, political or executive officers or bodies, and will not do so at the suit of a private person, except as incidental and subsidiary to the protection of some private right, or the prevention of some private wrong.  p. 337.

6.  COUNTIES.— *Highway Improvements.— Contracts.— Cancellation.—Powers of Board of County Commissioners.*—Where the board of county commissioners entered into a contract for a highway improvement, and plaintiff contractor expended money and made its plans to commence the work as soon as money realized from the sale of bonds was in the hands of the county treasurer, but the board decided to make an order to cancel the contract with plaintiff because it wanted to contract for a different kind of a road, and it also instituted an action to have the contract set aside, *held* that plaintiff was entitled to an injunction to restrain the cancellation of the contract. p. 337.

7.  INJUNCTION.—*Cancellation of Contract.—Right to Equitable Relief.—Adequacy of Legal Remedy.*—Where a board of county commissioners had an action pending to have a contract with plaintiff contractor vacated, and where the board announced

that at its next regular meeting it would make an order canceling the contract, which action would have been without claim or color of right, and would have been an attempt to impair the contract with plaintiff and to cloud his rights thereunder, he had no adequate legal remedy as practical and efficient as that afforded by equity, and it was within the jurisdiction of the circuit court to grant an injunction to restrain the board from canceling its contract with plaintiff. p. 339.

From Marshall Circuit Court; *Reuben R. Carr,* Judge.

Action by the Indiana Construction Company against Harrie E. Buck and others, as members of the board of commissioners of Marshall county. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Samuel Parker, Henry L. Humrichouser* and *Leopold M. Lauer,* for appellants.

*D. L. McKesson, Harley A. Logan, Long & Yarlott* and *Wolf & Barnes,* for appellee.

McMAHAN, J.—Complaint by appellee against appellants constituting the board of commissioners of Marshall county for an injunction. Appellants' motion to make the complaint more specific being overruled they filed a demurrer to the complaint which was also overruled. Exceptions were saved to each of these rulings, and, appellants refusing to plead, judgment was rendered against them as prayed in the complaint.

The first contention of appellants is that the court erred in overruling their motion to make the complaint more specific. The matters which this motion

1. asked to be stated and set out in the complaint did not relate to any of the allegations contained in the complaint. It called for matters in defense and asked that such matters be stated in the complaint. There was no error in overruling this motion.

The complaint, after alleging that appellee was a corporation and that appellants were the members of the board of commissioners of Marshall county, alleged that

in April, 1919, a petition signed by more than fifty free-holders and voters of said county was filed with the auditor of said county for the improvement of a high-way under the county unit road law; that a certain day was fixed for hearing said petition; that the auditor gave notice of such hearing by publication and posting as required by law; that, on the day fixed for such hear-ing the board of commissioners made an entry showing the giving of due notice; that no remonstrance had been filed; that the petition had been signed by eighty free-holders and voters of the county and ordered the peti-tion copied in the record, after which they appointed an engineer for the proposed improvement with direc-tions to make a report; that the board also found the proposed improvement was of public utility and ordered the auditor to call the county council in special session to consider the question of the public utility of such im-provement; that the county council met according to such call, and made a finding that such improvement was of public utility and at the June term of the board of commissioners, to wit: June 3, 1919, the auditor re-ported the finding of the council to the board of com-missioners; that the said petition was continued at the July and August terms of said board. The engineer made his report that the improvement was of public utility and showing complete plans and specifications for the work. In September the commissioners, at a special session, there being no remonstrances against the proposed improvement, ordered the same established and constructed in accordance with the plans and speci-fications on file, and ordered the auditor to give notice that sealed proposals for the construction of such work would be received November 4, 1919, on which date the board in regular session after finding that proper no-tice had been given proceeded to and did open the bids for the construction of such improvement and appel-

lee being the lowest responsible bidder let the contract for such work to appellee for the sum of $241,000, and, after approving appellee's bond, the commissioners and appellee entered into a written contract whereby appellee agreed to complete and construct the improvement in accordance to the plans and specifications for said sum of $241,000, on or before 200 working days after the bonds were sold.

It is further alleged that said proceedings were thereafter continued from term to term, and at the regular April term, 1920, the board of commissioners enacted a bond ordinance and filed its petition with the State Board of Tax Commissioners for permission to sell said bonds. The said matter was thereafter continued from term to term until January 4, 1921, when the board of commissioners determined to sell such bonds and ordered that notice of such sale be given as required by law, and at the February term, 1921, the board, after finding that proper notice of such sale had been given, and no remonstrances being filed, ordered that the bonds be issued and offered for sale and that at a special session thereafter held at which all the members of the board were present, the bond ordinance theretofore entered in April, 1920, was repealed and a new bond ordinance providing for the sale of bonds was enacted and notice of the sale of the bonds was duly given and that upon and after the giving of such notice one Flynn made a bid for such bonds and that the treasurer of the county accepted such bid, but that the money for such bonds had not been paid to the treasurer and that the treasurer had given out that he had been ordered by the board of commissioners not to accept the money for said bonds; that there was no money in the hands of the county treasurer or elsewhere available for the purpose of paying the cost of said improvement; that appellants had given out that at the regular meeting of said board

beginning August 1, 1921, the said board of commissioners intended to and would make an order canceling the contract so made with appellee for said improvement; that appellee had expended money and made its plans to commence the work in August, 1921, and as soon as the money was on hand to pay the estimates for the improvement; that, if said contract is canceled it will delay the work and appellee will suffer irreparable damages. It also alleged that appellee had performed all the things to be performed by it until the money with which to pay for the improvement was in the county treasury; that the said board of commissioners had commenced an action in the circuit court of said county asking that said contract be canceled; that said board of commissioners had no ground for the cancellation of said contract other than its desire to contract for some other kind of a road; that there is no legal ground upon which the contract can be canceled or set aside by the board, and asking for a restraining order and that on final hearing appellants be enjoined from canceling said contract.

Appellants demurred to this complaint on the ground: (1) that the court had no jurisdiction of the subject-matter; and (2) for want of facts.

Appellants contend that appellee had an adequate legal remedy in an action for damages and that it was not entitled to injunctive relief. In discussing this and other questions involved in this appeal it must be kept in mind that the act sought to be enjoined is neither a judicial nor legislative act. It is an administrative act, and one which appellants do not claim they had any right to do. A number of cases are cited by appellants in support of their contention but we do not consider them as being in point or of any controlling influence.

In *Board, etc.* v. *Jewett* (1915), 184 Ind. 63, 110 N. E. 553, the appellee filed a complaint to enjoin the board

of commissioners from exercising a legislative function and it was there held that the action would not lie. To the same effect see *Modlin* v. *Board, etc.* (1913), 55 Ind. App. 239, 103 N. E. 506.

*Smith* v. *Smith* (1902), 159 Ind. 388, 65 N. E. 183, was an action to enjoin the auditor of Marion county from placing upon the tax duplicates an illegal assessment. The action of the lower court in granting the injunction was reversed not upon the ground that injunction would not lie, but because the action was prematurely brought. The court saying "it is contrary to public policy unnecessarily to interrupt the ingathering of the public revenues," and holding that, under the facts in that case the action would not lie until after the assessment had been made, and the treasurer was proceeding or threatening to collect. In *Paddock, Mayor* v. *State, ex rel.* (1916), 185 Ind. 650, 114 N. E. 217, the common council of the city of Portland had by resolution awarded a contract to the relators for the improvement of a certain street and by resolution directed the appellant as mayor to execute the contract on behalf of the city. Two days later, but before the contract had been executed, the council reconsidered its vote on the resolution awarding the contract and awarded the contract to another party. The relators thereafter tendered the mayor a contract in the form provided for in the first resolution and demanded that the mayor execute the same, and, on his refusal, began an action in mandamus to compel such action. It was there held that the action would not lie because the action of the common council, in reconsidering its action wherein the mayor had been authorized to enter into a contract with the relators, operated as a revocation of the mayor's authority to execute the contract.

In *City of Newcastle* v. *Dingle* (1916), 185 Ind. 626, 114 N. E. 221, appellee Dingle and the city had entered

into a contract for the improvement of a certain street. The work had been completed and accepted by the city after which suit was commenced against the city for damages by reason of the failure of the city to remove certain telephone poles. The court in holding that such an action would lie, said: "The capacity in which a city enters into contracts for improvements of its streets is not the same as that of purely governmental agencies such as counties and townships. A municipal corporation exercises other functions than those granted to it or imposed upon it as an agent of the state. It exercises some rights as a corporation as such, and in exercising these rights it is in general responsible as other corporations for injuries and damages resulting from such acts."

A county, however, is not to be considered as a municipal corporation. Counties are simply civil divisions of the state for judicial and political purposes, created by the legislature of its own will, without any particular solicitation, consent or concurrent action on the part of the people. They are nothing more than territorial subdivisions, treated as bodies corporate only for certain specified purposes, and are usually considered to be no more than *quasi* corporations. *State, ex rel.* v. *Hart* (1896), 144 Ind. 107, 43 N. E. 7, 33 L. R. A. 118; *State, ex rel.* v. *Goldthait* (1909), 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 738. As said by the court in *State, ex rel.* v. *Hart, supra*: "The powers of the board of commissioners are limited and for any act done by them not within the scope of their powers, the county is not liable. * * * Considered with respect to their corporate powers, counties rank low down in the scale of corporate existence, and are frequently termed *quasi* corporations." See, also, *Mc-Dermott* v. *Board, etc.* (1915), 60 Ind. App. 209, 110 N. E. 237.

Boards of county commissioners, in improving public highways and entering into contracts for that purpose, are not acting as agents of a municipal corpora-

3, 4. tion. In such cases they are by virtue of the statute acting as agents of the state, and, in the absence of a statute, no action can be maintained against such a board for damages because of a breach of such a contract. Cases involving the right to prosecute actions against an individual or against a municipal corporation for breach of contract are not in point and cannot be considered as authority for holding that appellee had a legal remedy by prosecuting an action against the board of commissioners for breach of contract. Such boards are creatures of limited powers and jurisdiction, and when the acts done by them are within the powers conferred, and have been performed in good faith, courts will not interfere with or control their acts, especially where they involve discretion. So long as they act within their prescribed limits courts of equity have no control—"but if they exceed those limits, if they are assuming to do that which the legislature has not said they may do, then, in so far as the excess is concerned, they have no authority; and, if their acts be of a nature to warrant an injunction, it will be granted against them." Adams, Equity 212; *English* v. *Smock* (1870), 34 Ind. 115, 7 Am. Rep. 215.

We think it clear that appellants had no power or authority to vacate or set aside the contract entered into with appellee, nor did they have any right or

5, 6. power to make any record in that regard that would in any manner hinder or delay appellee in carrying out its part of the contract, or that would impair its contract or have a tendency to cloud its rights to proceed under its contract.

It is true, as contended for by appellants, that dis-

cretionary powers vested by law in municipal corporations are not subject to judicial control, except in cases where fraud is shown or the discretion is being grossly abused to the oppression of the citizen. *Seward* v. *Town of Liberty* (1895), 142 Ind. 551, 42 N. E. 39. The general principle that equity possesses no power to revise, control or correct the action of public, political or executive officers or bodies, is, of course, well understood. It never does so at the suit of a private person, except as incidental and subsidiary to the protection of some private right, or the prevention of some private wrong. *Muhler* v. *Dedekin* (1889), 119 Ind. 481, 20 N. E. 700.

The acts of appellants, as members of the board of commissioners in the execution of the contract and the sale of the bonds, were administrative in character. When the contract for the construction of the road was executed, the rights of the parties thereunder became fixed. Acts which are within the discretion of the governing body, such as the board of county commissioners, or acts which are void but which do not in some way affect or threaten individual property rights, such as the interest of taxpayers, are not subject to the control of courts of chancery. *Muhler* v. *Hedekin, supra.* But the acts which appellants were enjoined from doing, did affect property rights and were acts which appellants had no right to do. Appellants having no power or authority to cancel the contract, they had no discretion in the matter.

In *Wabaska Electric Co.* v. *City of Wymore* (1900), 60 Nebr. 199, 82 N. W. 626, it was held that, where the mayor and common council of a city threaten to exceed their authority and adopt an ordinance which will be prejudicial to the rights of an individual, an injunction might, in a proper case, issue against them.

It has been frequently held that the court may, in its discretion, in a proper case, by its injunctive power, prevent any attempt on the part of a municipal corporation· to violate its contract.   Joyce, Injunctions §1270; *Asbury Park &. S. G. R. Co.* v. *Neptune Township* (1907), 73 N. J. Eq. 323, 67 Atl. 790; *Citizens' Street R. Co.* v. *City Railway Co.* (1893), 56 Fed. 746; *Eau Claire, etc., Co.* v. *City of Eau Claire* (1908), 134 Wis. 548, 115 N. W. 155.   And in *Cleveland City R. Co.* v. *City of Cleveland* (1899), 94 Fed. 385, it was held that the court would enjoin the passage of an ordinance which would impair contract ·rights, upon the ground that contracts cannot be annulled or amended except by consent of both parties, and are protected from impairment by the federal constitution.   We do not think it necessary to enter into a discussion of the authorities holding that a contract once entered into cannot be annulled or amended without the consent of both parties; but see, *Chicago* v. *Sheldon* (1870), 9 Wall. 50, 19 L. Ed. 594; *New Orleans Water Co.* v. *Rivers* (1885), 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525.

We are not impressed with the contentions of appellants that appellee had a plain and adequate legal remedy by appealing from the board to the circuit court, and that the threatened action of appellants, if void, would have had no effect on the contract and hence could have been of no injury to appellee.   But, under the facts in this case, where the board of commissioners had an action pending in the circuit court to have the contract vacated, and where the threatened order was without color or claim of right and would have been an attempt to impair the contract and to cloud appellee's rights thereunder, we hold appellee had no adequate legal remedy as practical and efficient to the ends of justice and its prompt adminis-

tration, as the remedy in equity. See *Indianapolis, etc., Traction Co.* v. *Essington* (1912), 54 Ind. App. 286, 99 N. E. 757, 100 N. E. 765.

We also hold that the court had jurisdiction to grant the injunction as prayed for in the complaint.

Judgment affirmed.