CHARLES S. STEVENS

*v.*

THE COUNTY OF HENRY *et al.*

*Opinion filed December 20, 1905.*

1. INJUNCTION—*tax-payer may enjoin enforcement of a void contract by county.* A private citizen and tax-payer may maintain a bill to enjoin the enforcement of a void contract made by the county or any municipality in which he resides and pays taxes, if the contract would affect the rights, generally, of the tax-payers.

2. COUNTIES—*power to list and assess omitted property rests in board of review.* Since the passage of the Revenue act of 1898 the power to assess for taxation property omitted in former years is confined by law exclusively to the board of review, and local assessors no longer have that power.

3. SAME—*the supervisor of assessments has nothing to do with omitted property.* A county treasurer, who is supervisor of assessments by virtue of his office, has supervision over the township assessors only, and neither he, nor any deputy appointed by him, has anything to do with the question of omitted property.

4. SAME—*the county board has no power to make contracts to unearth omitted property.* The board of supervisors in a county under township organization has no power, in the absence of a specific grant, to enter into a contract with a person to search for and unearth property omitted for taxation in former years, since that duty rests on the board of review, and its performance, in case of a failure or refusal to act, may be compelled in an action at law.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding.

Henry county is under township organization. It has a population of less than 125,000. On January 6, 1904, said Henry county, by its board of supervisors, by resolution duly entered of record, contracted with George H. Manlove "to make diligent and careful search in this and other counties and States for such omitted and unassessed taxable property the taxes upon which are lawfully in this county, and upon the discovery thereof to report same to the proper officials, who shall proceed, as directed by the statute of the State of Illinois, to place same on tax rolls and to collect taxes therefrom, and also to make diligent and careful search for money due from other sources." Said Manlove was to receive as compensation for such services "a sum equal to twenty per cent of all money collected as a result of such services, but in no event to exceed the county's share of the amount so collected," and "to have one year, or such time as may be necessary, to complete such services," and was to furnish bond to keep safe and harmless the county from all costs, expenses and damages which may arise by reason of his doing anything under such agreement. By the order of employment it is also provided, "the county clerk is ordered to issue a warrant to the said George H. Manlove for any sums of money due him, on proper verified accounts to be filed with him." Appellant, a citizen, resident and tax-payer of said county, in March, 1904, exhibited his bill in the circuit court

of said county for an injunction to restrain said county, the county clerk, the county treasurer and said Manlove, the appellees herein, from executing said contract. On notice to appellees a temporary or interlocutory injunction was issued March 7, 1904. The bill alleged the making of the contract, and that appellee Manlove had executed the indemnity bond to the county in compliance with the order of employment, and that said Manlove and the county were about to enter upon the execution of the contract; that said contract is unlawful, null, void, *ultra vires,* contrary to law and public policy, and if permitted to be executed the moneys of the county would be unlawfully wasted and misappropriated, to the injury of the tax-payers. In his bill appellant stated that he is not advised whether there is any omitted or unassessed taxable property in the county upon which taxes are due, but if there is any such property it is the duty of the township officers and supervisor of assessments and board of review to place the same upon the tax books of the county, and in event of the unlawful failure or refusal there is a remedy to compel them so to do.

In August, 1904, appellees filed their joint and several answer, in which they admitted the making of the contract between said Henry county and said Manlove; admitted that said Manlove had filed his bond conditioned in pursuance of said contract, and that appellees were ready and intended to carry out and execute said contract. Appellees, further answering, say that John S. Smith, the supervisor of assessments, intended and expected to appoint said Manlove deputy supervisor of assessments for said county for the ensuing year after date of such contract, and that said Manlove was to receive and accept such appointment, to make careful and diligent search for property omitted from assessment of taxes due said county and its subordinate municipalities, and to make report of the same to proper officials of the county for assessment and taxation, and that the board of supervisors for the county expected to approve and

consent to such appointment, and that when they made the contract mentioned in the bill they intended to advise such appointment of Manlove by the supervisor of assessments, and said board expected to ratify the appointment and fix his compensation as the same was fixed by said contract. They further state in their answer that they are informed and believe it to be true that a large amount of personal property, representing hundreds of thousands of dollars of various kinds of securities that should be listed in said county, is unlawfully and corruptly secreted and held from the assessment roll; that many of said securities are of record in other counties of this State and in other States, and that unless some one is employed to make diligent search for such property the taxes thereon will be wholly lost.

Appellant excepted to so much of the answer as set up the intention of the supervisor of assessments to appoint Manlove his deputy, and of the county board to approve the appointment and fix the salary the same as it was fixed in the contract, and the court sustained the exception.

The case was heard at the September term, 1904, on the bill and answer, and a decree was entered perpetually enjoining the execution of the contract. An appeal was prosecuted to the Appellate Court for the Second District, where the decree of the circuit court was reversed and the cause remanded, with directions to the circuit court to dissolve the injunction and dismiss the bill. From the judgment of the Appellate Court this appeal is prosecuted.

N. F. ANDERSON, and HENRY WATERMAN, for appellant:

The power of counties is limited strictly to those powers expressly granted or necessarily implied or essential to those granted. *Scates* v. *King,* 110 Ill. 456.

No power has been granted to counties, either expressly or by implication, authorizing them to provide means for the listing of property for taxation, nor is the contracting for such means essential to the performance of any power vested

in or of any duty enjoined upon the board. *Gannaway* v. *McFall,* 109 Ill. App. 23; *Grannis* v. *Board of Comrs.* 83 N. W. Rep. 495; *Story* v. *Murphy,* 81 id. 23; *House* v. *LosAngeles Co.* 37 Pac. Rep. 796; *Platte Co.* v. *Gerrard,* 11 N. W. Rep. 298.

A tax-paying private citizen may enjoin a municipal corporation from issuing evidence of an illegal debt. *Wright* v. *Bishop,* 88 Ill. 302; *Chesnutwood* v. *Hood,* 68 id. 132; *Springfield* v. *Edwards,* 84 id. 626; 2 Dillon on Mun. Corp. (4th ed.) 916-919; *Grannis* v. *Board of Comrs.* 83 N. W. Rep. 495.

Such private individual may, by injunction, restrain the "execution of the illegal contract." *Chicago* v. *Nichols,* 177 Ill. 97; *Gannaway* v. *McFall,* 109 Ill. App. 23.

The execution of an *ultra vires* contract, while yet wholly executory, may be restrained and canceled, even though nothing has been done under the contract so as to threaten a present disbursement of money. *Adams* v. *Brenan,* 177 Ill. 194; *Holden* v. *Alton,* 179 id. 318.

CHARLES E. STURTZ, State's Attorney, and SEARLE & MARSHALL, for appellees:

A private citizen cannot maintain a suit of this character. To warrant the interposition of a court of equity there must be a certainty of injury. 16 Am. & Eng. Ency. of Law, 360.

As to powers of counties, express, implied and essential to corporate management, see *Wheeler* v. *County of Wayne,* 132 Ill. 604.

Counties and county boards have power and authority to make contracts of the nature of the one in question. *Garrigus* v. *Board of Comrs.* 60 N. E. Rep. 948; *Fleener* v. *Litsey,* 66 id. 82; *Richmond* v. *Dickinson,* 58 id. 260; *Gillett* v. *Logan County,* 67 Ill. 256; *Franklin County* v. *Layman,* 145 id. 138; *Board of Comrs.* v. *Dickinson,* 53 N. E. Rep. 929; *Gas Light Co.* v. *People,* 138 Ill. 336; *Barnard*

*& Co.* v. *Sangamon County,* 190 id. 116; *Wilhelm* v. *Cedar Co.* 50 Iowa, 254.

It is no objection to such contract that the compensation is contingent. Such a contract is not champertous. 5 Am. & Eng. Ency. of Law, 826.

Mr. JUSTICE RICKS delivered the opinion of the court:

The appellees, to sustain the judgment of the Appellate Court, question the right of appellant, as a private citizen and tax-payer, to prosecute the bill in question, and among other things urge that because appellant stated in his bill that he was not advised whether there was property that had been omitted from taxation, therefore he did not show that he would be injured. We have no doubt of the right of a private citizen and tax-payer to enjoin the enforcement or execution of a void contract made by a county or any municipality in which he resides and pays taxes that would affect the rights, generally, of the tax-payers. Under the contract in question there remained nothing to be done except that appellee Manlove should enter upon the performance of it, and when he performed in whole or in part and rendered an account to the county clerk, the latter is directed by the contract and order of employment to issue to Manlove an order for the payment of the money. The contract did not contemplate any further action by the county board. In its order of employment the county, by its board of supervisors, recited that a public necessity existed for the employment of experienced and competent persons to make diligent search for omitted, unassessed taxable property. We do not feel it necessary to enter into a further discussion of this phase of the case, as if we shall conclude that this contract was void, then we are not uncertain as to appellant's right to maintain his bill or the sufficiency of the allegations thereof.

We quite agree with appellees that the correct rule as to the powers of a county is announced in *Wheeler* v. *County*

*of Wayne,* 132 Ill. 599, where it is thus stated (p. 604):
"Counties can only exercise such powers, first, as are granted
by express words; second, those necessarily or fairly im-
plied in or incident to the powers expressed; and third,
those essential to the declared objects and purposes of the
corporation, not simply convenient but indispensable. * * *
Of every municipal corporation the charter or statute by
which it is created is its organic act. Neither the corpora-
tion nor its officers can do any act or make any contract or
incur any liability not authorized thereby."

The powers and duties of counties and county boards are
declared and found in sections 22 to 26 of chapter 34 of
Hurd's Statutes of 1903. There a county is declared to be a
body corporate, and that the powers of the county as a body
corporate shall be exercised by the board of supervisors. By
paragraph 3 of section 24 it is provided that counties shall
have power "to make all contracts and do all other acts in
relation to the property and concerns of the county, neces-
sary to the exercise of its corporate powers." By para-
graph 2 of section 25 it is provided that county boards shall
have power "to manage the county funds and county busi-
ness, except as otherwise specifically provided," and by para-
graph 3, "to examine and settle all accounts against the
county and all accounts concerning the receipts and expen-
ditures of the county." These powers are pointed out and
relied upon by appellees as authority for a county entering
into the contract here complained of. It has not been pointed
out, nor do we think it can be, that the assessment of prop-
erty for taxation, either omitted or otherwise, is the busi-
ness or concern of a county, as such. In counties under
township organization the primary assessment is made by
the local assessors elected by the people of the township.
Their work is supervised by the county treasurer, who, by
law, is made supervisor of assessments. When the books are
returned by the local assessors they pass into the hands of
the board of review, which, in counties of the kind and class

of Henry, consists of the chairman of the board of supervisors and two citizens of the county to be appointed by the county judge. The duties of the board of review are prescribed by statute, and the first duty enjoined upon the board is to "assess all property subject to assessment which shall not have been assessed by the assessors." (Hurd's Stat. 1903, chap. 120, par. 329.) That provision has been examined and passed upon by this court, and we have held that since the act of 1898 the power to list and assess omitted property is confined by law exclusively to the board of review. (*People ex rel.* v. *Sellars,* 179 Ill. 170.) When the board of review has finished its work the books are returned to the county clerk, who extends the taxes, and the only authority vested in the county board is to levy taxes for county purposes, based on the assessment already made, and supervise the levies made by certain inferior bodies and order the same extended on the tax books against the assessment.

It has not even been suggested that the selection of the chairman of the county board and his designation as a member of the board of review by the legislature did in the most remote degree give the board of supervisors authority over the matter of assessments, and his selection was no recognition of the authority of the board of supervisors over such matters. The broad contention is, that the matter of taxation is a county concern, and in that connection it is pointed out that section 33 of chapter 34 provides that "it shall be the duty of the county boards of each of the counties of this State to take and order suitable and proper measures for the prosecuting and defending of all suits to be brought by or against their respective counties, and all suits which it may become necessary to prosecute or defend to enforce the collection of all taxes charged on the State assessment." The last provision of that section would seem to refute, rather than support, the contention of appellees. If it can have any significance, it is a clear recognition, if not declaration, on the part of the legislature that the county is not concerned

in the matter of taxes until they are charged on the State assessment. It will readily be conceded that there is a wide distinction between taxes charged on an assessment and the making of an assessment itself, and while it is true that unpaid taxes are an asset of the county, the taxes that are to arise upon an assessment not made cannot be said to be an asset of any sort, and unless it can be said that the matter of assessment is a concern of the county, it is manifest that the contract under consideration cannot be sustained.

It is conceded by the appellees that the question now under consideration has not before been passed upon by this court, and *Gillett* v. *Logan County,* 67 Ill. 256, *County of Franklin* v. *Layman,* 145 id. 138, *Ottawa Gas Light Co.* v. *People,* 138 id. 336, and *Barnard & Co.* v. *County of Sangamon,* 190 id. 116, are cited and relied upon by appellees as being analogous to the case before us. We are unable to say that any of them have any application. The power to sue and be sued is conferred upon counties, and *Gillett* v. *Logan County, supra,* simply holds that a county may employ counsel to procure evidence in defense of a contemplated suit against the county in relation to its bonds. *County of Franklin* v. *Layman, supra,* sustains the employment of counsel in a case involving the validity of the bonds of the county. The action against the Ottawa Gas Light Company was to collect a delinquent tax that had been charged on an assessment, and *Barnard & Co.* v. *County of Sangamon, supra,* simply involves the authority of the board to furnish books and blanks to the county clerk's office under paragraph 3 of section 26, chapter 34, of the Revised Statutes above referred to. In fact, each of these cases has its foundation in the powers expressly granted by the statute.

Appellees cite four cases from Indiana which do, in a general way, sustain their contention. The cases so relied upon are *Fleener* v. *Litsey,* 66 N. E. Rep. 82, *Garrigus* v. *Board of Commissioners,* 60 id. 948, *City of Richmond* v. *Dickenson,* 58 id. 260, and *Board of Commissioners* v. *Dick-*

*enson,* 53 id. 929. These cases arise upon a peculiar statute of that State, which reads: "The board of commissioners shall, unless in cases of indispensable public necessity to be found and entered of record as part of its orders, make no allowance not specifically required by law to any county auditor, clerk, assessor, sheriff or treasurer, either directly or indirectly, or to any clerk, deputy, bailiff or any employee of such officer; nor shall they, except in cases above provided, employ any person to perform any duty required by law of any officer or for any duty to be paid by commission or percentage. * * * If it be found necessary, and so entered of record, to employ any person to render any service, as contemplated in this section, as a public necessity, the contract for such employment shall be spread of record in said court, and for such service rendered the claimant shall file his account in said court ten days before the beginning of the term, and any tax-payer shall have the right to contest the claim." Under this statute the commissioners of Park county employed Fleener and another, and made a contract somewhat similar to the one before us. When the bill was presented for the services, Litsey, as a tax-payer, objected. The court held that the duty to search for omitted property was not cast upon any officer, and that under the provisions of the above statute the county commissioners were authorized to employ a person by making the declaration of record that an indispensable public necessity required it. The *Fleener case,* the *Garrigus case* and *Board of Commissioners* v. *Dickenson* are each predicated upon that statute. *City of Richmond* v. *Dickenson* holds that under the law relating to the powers of cities and villages the city of Richmond had power to make a similar contract for a similar purpose. This last case illustrates what seems to us a very serious objection to admitting the contention of appellees in the present case. There is just as much authority under our law for every city, school district, township and other minor municipality in a county to employ a "tax

ferret," as those persons who engage in that business are termed, as there is for a county to do so, and Indiana has practically gone to that extent. It is sufficient to say that we have read the Indiana cases and do not agree with the reasoning further than as it is applied to the powers under their statute, and that the case is wholly inapplicable to the case before us. In this State, by our statute the board of review is expressly and by mandatory language required to assess property that has not been assessed by the local assessors. We have held in *People* v. *Sellars, supra,* the language there used refers to and means omitted property, and that the duty to assess such property is cast upon the board of review, and that local or township assessors no longer have that authority.

Appellee Smith was the county treasurer, and as such was the supervisor of assessments of the county, but his supervision was wholly confined to the township assessors. He had no supervision over the board of review, and so much of the answer as stated that it was his intention to appoint appellee Manlove his deputy, and the intention of the county board to confirm the appointment and fix the salary as agreed upon in the contract here in controversy, was properly stricken, because as supervisor of assessments Smith had nothing to do with the question of omitted property, nor could any one acting as his deputy be given greater power or authority than had the chief officer, the supervisor.

We do not yield our consent to the proposition or contention that no officer or body of officers is charged with the duty of hunting and assessing omitted property, but take the view that that duty is cast upon the board of review, and if its members refuse to perform it they could be compelled to do so by action at law, and would be guilty of misfeasance in office if they had knowledge and failed to do so. The statute having designated the proper officers for the discharge of this duty and having charged them therewith and provided for the compensation they shall receive, we do

not think the county, in the absence of any specific grant, had power to enter into the contract with Manlove. If it should be conceded that the statute does not require the board of review to hunt for and endeavor to discover secreted, omitted property for taxation, we would still adhere to our position that the county, in the absence of a grant of power to do so, would have no authority to make the contract in question. Such situation might well be deplored and the necessity be apparent for a law charging some person or persons specifically with the duty or authorizing the county board or some competent authority to employ persons capable of such work; but if such should be the case it would be a suitable matter to call to the attention of the legislative department, and cannot be reached by the unauthorized action of county boards or other local governmental bodies who have no such powers granted them.

This question has been before the courts of Minnesota, (*Grannis* v. *Board of Commissioners,* 83 N. W. Rep. 495,) North Dakota, (*Storey* v. *Murphy,* 81 N. W. Rep. 23,) California, (*House* v. *LosAngeles County,* 37 Pac. Rep. 769,) and Nebraska, (*Platte County* v. *Gerrard,* 11 N. W. Rep. 298,) and in each instance the court has held against the power of a county board or county commissioners to make such a contract.

We regard the case of *Grannis* v. *Board of Commissioners, supra,* as being on all-fours with the case at bar, for the reason that the language of the statute of Minnesota giving power to the board of commissioners seems to be identical with the language of our statute granting powers to the board of supervisors, viz., "to make all contracts and do all other acts in relation to the property and concerns of the county necessary to its corporate powers." That section was invoked there as here and held to have no application. In that case, after announcing the principle that counties can only exercise such powers as are expressly granted them by the legislature or fairly implied as necessary to the ex-

ercise of the powers expressly granted, the court proceeds
(p. 496) : "The power of taxation belongs exclusively to the
State. And with respect to the levy, assessment and collec-
tion of taxes, counties, as such, or their agents, the board
of commissioners, have no authority whatever. The legis-
lature has provided officers whose duty it is to levy all taxes,
officers to cause all property to be properly assessed and
placed upon the tax rolls, and officers for the collection of
such taxes. The county commissioners, as agents and offi-
cers of the county, have no authority or control over any of
those officials with respect to the performance of their du-
ties. They act independently of such commissioners and
are responsible to the State for the faithful discharge of
their duties. It is true that the county is interested and con-
cerned in the matter of the collection of taxes. Its reve-
nues are chiefly derived therefrom, and it is important to it,
and to the State as well, that all property properly taxable
pay its just share and proportion of the public burdens. But
the county is not charged with the duty of seeing after it
that all such property is assessed and placed upon the tax
rolls. Other officials, acting independently of the county, are
charged with the performance of such duties, and they alone
are responsible therefor. The matter of unearthing and dis-
covering property which has escaped taxation is not only
not necessary to the exercise of the corporate powers of a
county, but is beyond its express or implied authority. The
doctrine of *ultra vires* is held and applied more strictly to
the acts of municipal bodies than to a private corporation."

We think the decree of the circuit court was right and
that the Appellate Court erred in reversing it. The judg-
ment of the Appellate Court is reversed and the decree of
the circuit court is affirmed.          *Judgment reversed.*