People of the State of Illinois, ex rel. Henry J. Spitzer, Plaintiff-Appellee, v. The County of LaSalle, Illinois, The Board of Supervisors of LaSalle County, Illinois, George L. Hunter, County Clerk of LaSalle County, Illinois, Russel V. Wright, County Treasurer of LaSalle County, Illinois, and J. L. Jacobs and Company, a Partnership, Defendants-Appellants.

Gen. No. 11,260.

Second District, First Division.

October 9, 1959.

Rehearing denied November 30, 1959.

Released for publication November 30, 1959.

Johnson, Colmar, O'Meara, and Brow, of Chicago (James J. O'Meara, Jr., Russell E. Q. Johnson, and Howard J. De Pree, of counsel) for defendants-appellants.

John S. Massieon, of Peru, and Berry and O'Conor, of Streator, for plaintiff-appellee.

PRESIDING JUSTICE SPIVEY delivered the opinion of the court.

Two contracts were executed by the Defendant, J. L. Jacobs and Company, hereafter called "Company" and the Tax Committee of the County Board of Supervisors of LaSalle County, Illinois. The first contract was styled *Specifications and Agreement for Preparation of Property Record Cards and Appraisal of Commercial and Industrial Real and Tangible Personal Property*. The second contract was styled *Agreement for Preparation of Property Record Cards and Appraisal of All Locally Assessable Non-Industrial Real Estate*. A fair reading of the contracts indicates that the Company undertook to appraise all commercial and non-commercial and industrial and non-industrial real estate and tangible personal property in LaSalle County, Illinois. In addition, the Company agreed to furnish property record cards for real property containing all the information recommended by the State of Illinois, Department of Revenue, including location and description of the property, ground plan sketch, owner's name and address, appraised valuation of land and improvements. The Company was also to furnish tangible personal property forms containing all information necessary for listing and appraising inventories, goods and merchandise and works in process,

141

furniture and fixtures, machinery and equipment including location and description of each class of tangible personal property and the appraised valuation of such class of property.

The Company agreed to develop appraisal standards and furnish a manual of procedures. Also to be furnished were the appraised valuations of the land recorded on the property record card to be determined by the application of basic unit values and the appraised valuation of buildings and tangible personal property. In addition, the Company agreed to review with the Township Assessors and County Assessment officials the appraisal standards and procedures established by the Company. All of the valuation data of the Company and the land maps prepared by the Company were to be duplicated and left with the Tax Committee of the Board of Supervisors. The Company agreed that its appraisers and field assistants would measure each building or lot and prepare a pencil sketch and the Company was to furnish all personnel including appraisers. The appraisal supervisor of the Company was required to appear and testify as an expert witness in processing appeals before the County Board of Review for a period of twenty (20) working days during the year the new assessments become effective. Under the contract the Company was also to assist the Tax Committee and Board of Supervisors to develop a public relations program on systematic property valuation by preparing newspaper articles, giving talks to civic, business and other groups.

In consideration for the services to be performed by the Company, the County agreed to furnish certain information with reference to the legal description of real estate, agreed to provide working space in the courthouse together with necessary furnishings, agreed to furnish a bond to the Company at the County's expense for the performance of the contract and agreed

to pay a total amount of $245,000 for the services to be performed by the Company.

Plaintiff, a resident and taxpayer of LaSalle County, brought suit in the Circuit Court of LaSalle County and alleged the execution of the contracts. He also alleged that the Company had entered upon the performance of one of the contracts and had completed a major portion of the work and had been paid $50,000 for services rendered at the time of filing the suit. Plaintiff alleged that the contract was null and void, but that the public officials of the County resisted efforts to prevent the illegal payment of county funds to the Company. In his complaint Plaintiff charged that the Board of Supervisors had no authority to contract with any person or firm for the performance of the duties of the regularly elected or appointed assessment officials of the County. Plaintiff also charged that the statute the Board relied upon as authority to execute the contract was vague, indefinite and ambiguous and invalid. Several constitutional questions were raised by the Plaintiff also, but it is not necessary to reiterate these here. The complaint concluded with an allegation that Plaintiff had no adequate remedy at law and prayed that the contract be set aside and declared null and void and ultra vires. Plaintiff also prayed for an injunction to restrain the parties to the agreement from any further performance under the contract and to restrain any payment under the contracts. The Court was requested to restrain the officials of the County from using or applying any of the services, valuations or results which the Company furnished under the contract. Plaintiff requested that the Company be ordered to restore funds paid by the County to it and that costs be assessed against the Company.

The cause was tried by the court and the court found the issues for the Plaintiff and granted the re-

143

lief prayed in the complaint. The trial court found that the contracts were ultra vires and void in that they attempted to bestow upon the Company power to perform duties imposed upon the assessment officials of LaSalle County and for the further reason that the County Board has no authority to contract with persons to discover property omitted from taxation. The trial court declined to pass upon the constitutional questions presented with reference to the statute.

■ It is contended that the statute is unconstitutional and invalid. We cannot pass upon such questions and this is so well established as to require the citation of no authority. Section 86 of the Civil Practice Act (Ill. Rev. Stat. 1957, Chapter 110, par. 86) would require us to transfer the cause to the Supreme Court on our own motion even in the absence of a motion to transfer if our jurisdiction is improperly invoked. Stevens v. Stevens, 14 Ill.2d 99, 150 N.E.2d 799. Here however, the determination of the validity of the statute is not essential to a decision of the case. If the issues can be fairly decided without reference to the statute, its constitutionality cannot be said to be involved and its validity will not be determined by the Supreme Court, Moran v. Zoning Board of Appeals, 11 Ill.2d 374, 377, 143 N.E.2d 16. Under these circumstances it would not be proper for us to transfer the cause and it must be determined upon the other issues.

This appeal was perfected from the decree of the trial court. Defendant Company contends that the court erred in declaring the contract ultra vires for the reason that the County Board had the statutory authority to enter into contracts with the Company for the preparation of a detailed property record system which would provide information useful to assessment officials. This authority, the Company contends, is contained in Paragraph 25 of Chapter 34,

Illinois Revised Statutes, 1955, and in Section 25.16 of the same chapter. Section 25 provides:

"The County Board of each county has the powers enumerated in Sections 25.01 to 25.19, inclusive, subject to the conditions therein stated. Powers conferred on counties shall be in addition to and not in limitation of their existing powers."

The power granted in Section 25.16 is:

"To expend monies for the preparation, establishment and maintenance of a detailed property record system which would provide information useful to assessment officials. Such record shall be available to all assessing officials.

"The County Board may enter into contracts with persons, firms, or corporations for the preparation and establishment of such record system."

The Company is correct in its contention that the County may contract for a property record system, for the authority has been granted by the legislature. However, it begs the question to urge that the Board had the power to contract with the Company. The question to be determined is, "Did the Board have the authority to enter into these particular contracts with the Company?"

Defendant Company also contends that Section 25.16 is clear and unambiguous and that the term "property record system" has a recognized meaning to persons familiar with this endeavor.

In the view we take of this case, it is not necessary that we determine whether the statute is ambiguous or not. For, considering the contracts in the light of certain decisions of our Supreme Court, we believe that the true measure of the contracts may be taken. We reason that if the contracts encompass activities which the Supreme Court has stated to be beyond the power of the County Board, the contracts are ultra

vires and void. The legislature did not intend to authorize the doing of an illegal act.

Other contracts made by other County Boards have been before the Supreme Court and we need but look to these cases to determine whether the contract is ultra vires and void, or a valid obligation of the County.

In the case of The People v. Harding, 333 Ill. 384, 164 N.E. 827, a petition for a writ of mandamus was filed to compel the defendant to pay warrants drawn to compensate persons employed in a reassessment program. The defendant County Treasurer refused to pay the warrants for the reason that the warrants provided for compensation in excess of $10 per day, which sum was the maximum authorized for the assessor's chief clerk, and exceeded $7 per day which was the maximum authorized for deputy assessors.

There, the Board of Assessors of Cook County, in a communication to the County Board detailed the work it deemed necessary for the accomplishment of the objective of reappraisal and suggested that the Board employ certain persons at established rates to perform the tasks. In reviewing the communication, the Supreme Court characterized the work as follows:

"The detailed description of the work to be done, as shown in Exhibit 'A,' included the establishment of appraised land values throughout urban and suburban territory of Cook County through research, sales analysis and judgment of staff of land valuation experts. Tentative values to be submitted at meetings of property owners for review and criticism prior to adoption of final unit values. Preparation and publication of final unit-value maps. Computation of individual lot values. Establishment of acreage values. Preparation of a schedule of cost factors and classification of typical buildings of all general types in Cook County upon the basis of the local present cost of construction for labor and material, by conferences between building

146

valuation engineers of the Board of Assessors and local committees of architects, contractors and materialmen. Description of all buildings in Cook County upon special building classification sheets. Classification and estimation of the replacement cost factors per square foot of floor area, or per cubic foot of volume, of each building by competent building valuation men working under the instruction and close supervision of building valuation engineers. Computation of the replacement cost, new, of each structure upon the basis of the classification cost factor established and its depreciation for age, condition, obsolescence, lack of utility and other causes. Deduction of such allowances producing a present sound value on each structure. Other details were included in the description of work to be done."

There is a striking similarity between the description of the work in the Harding case, supra, and the duties undertaken by the Defendant in the contract in the case at bar. Of these duties, the court in the Harding case said:

"All these duties are those which section 12 of the law imposes upon the assessors, requiring them in person or by deputy, to actually view and determine, as near as practicable, the value of each tract or lot of land listed for taxation as of the first day of April of each year and assess the same at the value required by law. They do not constitute the mere gathering and recording of information. They are in no sense clerical duties but are of the essence of the duty of the assessor in actually viewing and determining the value of each tract or lot of land and assessing the same at the value required by law. The law authorizes the appointment of deputy assessors, with power to determine the value of each tract of land and assess it, but does not authorize the employment of any other persons for that purpose. Neither the

147

County Board nor the Board of Assessors has authority to contract for the services of persons other than assessors or regularly appointed deputy assessors to assess property for taxation. The statute having designated the officers for the discharge of the duty of assessment and provided for the compensation they shall receive, neither the Board of Assessors nor the County Board has any power to enter into a contract with any other person to perform that duty. (Stevens v. Henry County, 218 Ill. 468; People v. Kankakee & S. R. Co., 265 Ill. 497; State v. Fry, 77 Kan. 540; Chase v. Commissioners of Boulder County, 37 Colo. 268; Grannis v. Board of Commissioners, 81 Minn. 55; Storey v. Murphy, 9 N. D. 115; House v. Los Angeles County, 104 Cal. 73; Platte County v. Gerard, 12 Neb. 244.) . . ."

In Stevens v. Henry County, 218 Ill. 468, 75 N. E. 1024, the County Board contracted for the discovery of property omitted from the tax rolls. This contract was challenged as being beyond the power of the County Board. The Supreme Court at page 479, said:

"The statute having designated the proper officers for the discharge of this duty and having charged them therewith and provided for the compensation they shall receive, we do not think the County, in the absence of any specific grant, had power to enter into the contract with Manlove. If it should be conceded that the statute does not require the board of review to hunt for an endeavor to discover secreted, omitted property for taxation, we would still adhere to our position that the County, in the absence of a grant of power to do so, would have no authority to make the contract in question."

■ These cases indicate to us that the contracts here must fall, for what was prohibited in the Harding and Stevens cases have been attempted in this case. We are in a better position to judge the intention of

148

the legislature if we know what it could not do and therefore, did not mean. We conclude as the trial court did, that these contracts attempt to bestow upon the Company the powers and duties of the assessors and boards of review. As such they are ultra vires and void and the court properly declared them so. This conclusion disposes of Defendant's contention that the contracts do not infringe upon the powers and duties of the assessors and boards of review.

Defendant further contends that the court's construction of the statute was erroneous and fails to give meaning to the language used in the statute. His opinion states: "This result cannot be achieved by any reasonable interpretation of Sec. 25.16 which will not effect the repeal of other statutes, which repeal is ruled out under the theory urged by Defendants here."

The trial court has given meaning to the statute consistent with the power of the County Board as defined by the Supreme Court.

Finally, Defendant contends that even if the entire contract was not authorized by Section 25.16, then at least some of the services were, and as to these the Defendant contends that it is entitled a reasonable payment. The Company cites McGovern v. Chicago, 281 Ill. 264, 118 N. E. 3, in support of its position. There, the court said, "There is another class of municipal contracts which are usually classed as ultra vires which are only so in a limited or secondary sense. These are contracts which are within the general powers of the corporation but which are void because the power was irregularly exercised, *or where some portion of the entire contract exceeds the corporate powers but other portions of the contract are within the corporate powers. . . .* This Court held that the lighting of the streets was a purpose clearly within the corporate powers of the city, that the contract had no element of illegality in it and that it was only

149

illegal in respect to the term of its duration; that the corporation having received the benefits under a contract which was merely ultra vires *it was bound to pay for the benefits received,* and that the rule applicable to municipal corporations in this regard was the same as in the case of a private corporation." (emphasis ours)

██ Section 29.95 of McQuillin's, The Law of Municipal Corporations, Volume 10, page 386, provides, "Where a part of a divisible contract is ultra vires, but neither malum in se nor malum prohibitum, the remainder may be enforced, unless it appears from a consideration of the whole contract that it would not have been made independently of the part which is void."

If the contract is malum prohibitum, then the rule of enforcement of divisible parts would not apply. In Ashton v. Cook County, 384 Ill. 287, 51 N.E.2d 161, our Supreme Court was confronted with a contention that an attorney was entitled to compensation for having collected in excess of $16,000,000 in delinquent taxes. Payment was denied because the collection of the delinquent taxes was a duty of the State's Attorney. The attorney also sought to recover under a count for quantum meruit. The Court said:

"Appellants also contend that they should be permitted to recover on a quantum meruit. Such a recovery is founded on the implied promise of the recipient of services or material to pay for something which he has received that is of value to him. Such principle can have no application in this case for the reason that the contracts were wholly void and created no rights and imposed no obligations. They come within the principle of law that where the legislature has withheld a power it is the same as though the exercise of the power was prohibited by law, Continen-

tal Illinois Nat. Bank & Trust Co. v. Peoples Trust & Savings Bank, 366 Ill. 366."

Thus, it can be seen that the state having withheld the power the contract is prohibited. If the contract is malum prohibitum, then there can be no recovery on a part of the contract.

The Court also said "To permit recovery of compensation in these cases on a quantum meruit would, in legal effect, give sanction to the giving of public funds to private use for the performance of duties which the law imposed upon the State's Attorney and for which he receives the salary fixed by law." Ashton v. Cook County, 384 Ill. 287, 51 N.E.2d 161.

"The question of whether any contract is entire or severable must depend on the intention of the parties to be ascertained from the language of the contract and the subject matter of it. White Brass Castings Co. v. Union Metal Mfg. Co. 135 Ill. App. 32; 17 C. J. S., p. 785, § 331, p. 788, § 332; p. 790, §§ 334, 335. If it appears the contract is to be performed as a whole, it is an entire contract." Stanmeyer v. Davis, 321 Ill. App. 227.

██ The question of whether this contract is entire or separable can be resolved only by a determination of the intent of the parties. This should be determined from the whole of the instrument considered. We believe that it was the intention of the parties that this property should be appraised and that the contract would not have been executed without provision for appraisal. This being so, we conclude that the contract was entire and compensation for a portion of the services contracted for would not be justified.

█ But there is still another reason why quantum meruit would not be proper in this case. A recovery in quantum meruit is founded on the implied promise of the recipient of services or material to pay for

151

something which he has received that is of value to him. Ashton v. Cook County, 384 Ill. 287, 51 N.E.2d 161.

It cannot be seriously contended that the County has received anything of value to it, for the Circuit Court enjoined the County from using any part of the services, records or information provided in the contract. Defendant cites many cases which contain language authorizing a recovery in quantum meruit in a proper case. We do not believe that this is a proper case, but whether it is or not, the language in each of the authorities cited precludes a recovery in this case. In Hall v. Cook County, 359 Ill. 528, 195 N.E. 54, the Court said, "All the decisions on this question naturally rest upon the rule that where a party has accepted and made his own the benefit of a contract, he has estopped himself from denying, in the courts, the validity of the instrument by which those benefits came to him. Parsons on Contracts, Vol. 2; 790." In Pittsburgh, C. & St. L. R. Co. v. Keokuk & Hamilton Bridge Co., 131 U. S. 371, it was stated, "A contract made by a corporation, which is unlawful and void because beyond the scope of its corporate powers, does not, by being carried into execution, become lawful and valid, but the proper remedy of the party aggrieved is by disaffirming the contract, and suing to recover, as on a quantum meruit, the value of what the defendant has actually received the benefit of . . . .

"In such case, however, the action is not maintained upon the lawful contract, nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, make compensation for property or money which it has no right to retain."

■ The County has received no legally recognizable benefit from the contract and now retains no

152

benefit and cannot in the future benefit from the unlawful contract. It would be beyond the scope of quantum meruit to call upon the County to pay for services which were performed under a void contract and which the County cannot legally enjoy. In a post trial hearing, the Company urged the court to allow compensation for all services performed under the contract except for certain work which it considered in the nature of appraisement and also excepted from the contract price the estimated charges made for conducting a public relations campaign. Apparently their theory was that if these two items were the only prohibited elements of the contract, then compensation should be allowed for all but these elements.

In this regard, the Company failed in its proof. We feel that the evidence shows that all of the work performed was for a single objective, that being to establish a valuation of the property for assessment.

Martin D. Miller, one of the partners of the Company was asked the following question: "I want to know what the reasonable value of your services would be to do nothing but appraise those properties and prepare cards." Mr. Miller answered, "I can't appraise it without preparing the cards." Later the witness was asked, "So to appraise you practically have to do all the rest of it too, do you not?", and he answered, "Yes, but it is factual data up to the time the appraiser puts his final figure on it."

There is a tacit recognition by the Company that an appraisal by any person other than the assessor is prohibited according to People v. Harding, 333 Ill. 384, 164 N. E. 827. Recognizing this, the Company typifies almost all of the services performed as the gathering of factual data until by some magic process, a figure is placed upon the property by an appraiser. This notwithstanding that a partner of the Company testi-

153

fied that to appraise the Company had to do all of the rest of the gathering of factual data. This argument is without merit.

Judgment of the Circuit Court of LaSalle County is affirmed.

Judgment affirmed.

McNEAL and DOVE, JJ., concur.