Ernest Bassi, Trustee, and Putnam County Bank, a Corporation, Plaintiffs-Appellees, v. Donald Langloss and Elma Langloss, Defendants-Appellants.

Gen. No. 11,421.

Second District, First Division.

December 6, 1960.

Walter C. Overbeck, of Henry, for appellants.

Peterson, Johnson & Martin, of Princeton, and Albert Pucci, of Hennepin, for appellees.

DOVE, J.

On October 2, 1953 Donald and Elma Langloss, husband and wife, executed their promissory note for $5,000.00 payable to the order of themselves which they endorsed and delivered to the Putnam County Bank. The principal sum was to be repaid in 60 monthly installments of $83.33 each and interest upon the principal sum was to be paid semi-annually at the rate of 5%. The note contained a warrant of attorney authorizing any attorney of any court of record to confess a judgment against the makers, at any time

after the execution of the note, for the amount thereof, together with costs including an attorney fee of 10%.

To secure the payment of this note the makers executed a trust deed by which they conveyed to Ernest Bassi, the cashier of said bank, as trustee, certain described property upon which they resided and which was located in the City of Henry, Marshall County. This trust deed contained a provision that if default be made in payment of the note as specified, or interest thereon, that then the whole of said principal sum and interest should, at the option of the holder of the note, become immediately due and the trust deed subject to foreclosure. The trust deed also provided that upon the sale of the premises at such foreclosure sale there should be paid out of the proceeds of said sale all costs including reasonable attorney and solicitors' fees to be fixed by the court and taxed as costs.

On September 30th, 1955 the instant complaint was filed in the circuit court of Marshall County by the trustee and the bank to foreclose the trust deed. The plaintiffs were represented by Albert Pucci and the complaint recites that he is the "attorney and solicitor" for the plaintiff. The complaint was in the usual form and averred that the amount due the plaintiff was $3996.88 in addition to 10% thereof for attorney fees. Thereafter and on February 25, 1956 an amendment was filed which averred the failure of the debtors to pay the taxes upon the property covered by the trust deed and also charged that they had failed to obtain insurance upon the improvements thereon.

The defendants, by their answer as amended, admitted the execution of the note and trust deed but denied that they were liable for any attorney fees and denied most of the other allegations of the complaint as amended. The answer averred that on May 25, 1956 the defendants tendered the plaintiffs $4360.52, the amount due to that date for principal and interest,

98

taxes and insurance premiums advanced together with interest on said sums so advanced but not including any attorney fees and alleged that the plaintiffs refused to accept said sum. The amended answer then alleged that Albert Pucci was the attorney for the plaintiffs; that he was elected County Judge of Putnam County, Illinois in November, 1954, qualified and was duly commissioned and at the time the complaint was filed herein he was discharging the duties of his office as County Judge and also practicing law as an attorney before the Courts of Illinois. The pleader concluded that plaintiff's attorney, being the County Judge of Putnam County, was disqualified from acting as an attorney for the plaintiff and that the agreement in the instant trust deed providing for the taxation of attorney fees for the benefit of Judge Pucci was contrary to public policy. Upon motion of plaintiff these paragraphs of the amended answer were stricken.

The defendants also filed a counterclaim which set forth an oral agreement between the bank and the defendants by the provisions of which defendants insisted that their default in making the monthly payments had been waived. A reply was filed denying the allegations of the counterclaim and the cause was referred to the master-in-chancery who heard the evidence and recommended a decree of foreclosure and sale as prayed.

Objections to the master's report were heard and overruled. The objections were ordered to stand as exceptions to the report of the master and after a hearing the chancellor overruled all exceptions, approved the report of the master and on March 18, 1960, rendered a decree of foreclosure and sale. The decree found $5624.01 due plaintiff from defendants for principal, interest, attorney fees, taxes and insurance premiums and directed that amount be paid within 30 days and in default of such payment that the

99

premises be sold. Included in the amount of $5624.01 is $350.00 which the decree found to be a reasonable attorney fee for the services performed by Judge Pucci. To reverse this decree defendants appeal and plaintiffs cross-appeal insisting that the chancellor erred in not allowing an attorney fee of at least $500.00.

Upon the hearing before the Master, Ernest Bassi testified that he was cashier of the Putnam County Bank and that the board of directors of that bank, of which Judge Pucci is vice-president, directed him to file the instant foreclosure proceeding; that thereafter and on May 25, 1956 counsel representing the defendants tendered to him in cash, $4360.52 together with accrued costs to that date amounting to $26.00; that Mr. Bassi and counsel for defendants contacted Judge Pucci at his office in the court house where the question of attorney fees was discussed; that Judge Pucci stated he would accept $250.00, that counsel for defendants then stated that he had $100.00 of his clients' money and would advance $50.00 out of his own pocket with which to pay Judge Pucci for his services but that said offer was made without prejudice to his position with reference to attorney fees as set forth in his answer. The tender and offer were refused.

At the hearing Judge Pucci testified that he was an attorney at law; that he represented the plaintiffs in this proceeding and practiced his profession at Hennepin, Illinois; that he prepared and filed the instant complaint and the amendment thereto, had conferences with the cashier of the plaintiff bank on four occasions and appeared before the court on matters involving the pleadings on two occasions and also appeared twice before the master in the taking of the testimony. He testified that in his opinion a reasonable fee to be allowed the plaintiffs for his services, if a decree of foreclosure is entered, would be $775.00.

100

Counsel for plaintiffs also called O. B. Pace, Jr., who testified that he resides and practices law in Lacon, Illinois and had lived and practiced law there for 16 years. Mr. Pace further testified that he had heard Mr. Pucci testify as to the services he rendered the plaintiffs in this cause, had examined the files in the case and also the schedule of fees prepared by the Illinois State Bar Association and in his opinion the usual, customary and reasonable fee earned by counsel for the plaintiffs in connection with this foreclosure proceeding would be $500.00.

In support of their cross-appeal it is insisted that there is no testimony in this record except that of Messrs. Pucci and Pace; that their evidence is not inherently improbable and in the absence of any evidence contradicting their testimony there is no reason or justification for the chancellor fixing the amount of the attorney fee at $350.00. In view of our conclusion upon another feature of the case no consideration need be given the cross-appeal.

The question raised in the trial court and presented by this record determinative of this appeal is whether Judge Pucci, the duly elected, commissioned and acting county judge of Putnam County at the time this suit was filed and during its pendency in the circuit court and in this court, is authorized to appear for and represent the plaintiffs in the circuit court of Marshall County and there prosecute, in their behalf, as their attorney, this foreclosure proceeding?

Section 16 of Article 6 of the Constitution of 1870 fixes the salary of circuit judges and provides that "from and after the adoption of this constitution, no judge of the supreme or circuit court shall receive any other compensation, perquisite or benefit, in any form whatsoever, nor perform any other than judicial duties to which may belong any emoluments."

Town of Bruce v. Dickey, 116 Ill. 527, 6 N. E. 435, was an action brought to recover for professional services rendered by plaintiff to defendant as an attorney at law. The greater part of the services rendered defendant was while the plaintiff was a member of the Supreme Court of this State. The court held there was no constitutional prohibition which barred a judge from practicing law and in the course of its opinion the court said that the language used in the constitution was quite inappropriate "in which to couch a prohibition to conduct a law suit or to perform any other work other than judicial duties under a private contract for a compensation to be paid." The court, however, went on to say (p. 537), "propriety may forbid a judge of the Supreme or Circuit Court from practicing law, as not being congruous with the judicial office, but we find no constitutional prohibition against it."

The Dickey case was decided on March 27, 1886. At that time section 10 of the Attorneys and Counselors Act prohibited certain judges from practicing as an attorney "in the court in which he presides." On October 31, 1891 the supreme court handed down an opinion in O'Hare v. Chicago, M. & N. R. Co., 139 Ill. 151, 28 N. E. 923. In the O'Hare case the Railroad Company filed a petition in the County Court of Cook County to acquire, by condemnation, certain premises belonging to Mary and Edward O'Hare. The petitioning Railroad Company was represented by Judge E. H. Gary and upon the case coming on for trial the defendant Mary O'Hare objected to Judge Gary being permitted to practice as an attorney in the County Court of Cook County for the reason that he was then judge of the County Court of DuPage County and in the habit of presiding in the County Court of Cook County where the cause was pending.

102

The record in the O'Hare case disclosed that Judge Gary was judge of the County Court of DuPage County and also had a law office in Chicago; that he practiced law in Cook County and had, at the request of the County Judge of Cook County, presided in that court in the trial of cases. The trial court overruled the motion and Judge Gary tried the case, as attorney for the plaintiff in the County Court of Cook County and followed the appeal to the Supreme Court. The Supreme Court approved the ruling of the trial court but stated that the practice of law by a county judge was not to be commended because of the tendency to bring the administration of the law into disrepute and contempt. The court then said that the mere fact that at some time in the past, Judge Gary had presided in particular cases in the County Court of Cook County did not disqualify him to appear in that court as an attorney. "We are of the opinion," concluded the court, "that under the facts shown, the attorney here sought to be excluded did not fall within the statutory inhibition."

In 1895 the Legislature amended section 10 of the Attorneys and Counselors Act which at the time the Dickey and O'Hare cases were decided, prohibited certain judges from practicing as an attorney "in the court in which he presides." In its present form this section provides that "no person who holds a commission as a justice of the Supreme Court of the State of Illinois or as a judge of any court of record in this State shall be permitted to practice as an attorney or counselor at law in the court in which he is commissioned or appointed nor shall any judge of any county or probate court be permitted to practice in the court of which he is commissioned or appointed." (Ill. Rev. St. 1959, Chap. 13, sec. 10.)

In Schnackenberg v. Towle, 4 Ill.2d 561, 123 N.E.2d 817, Elmer J. Schnackenberg filed his complaint in the Superior Court of Cook County against Rowland Towle for an accounting to recover two-thirds of an attorney fee for services alleged to have been jointly rendered by Schnackenberg and Towle in prosecuting a claim against the State of Illinois for a refund of taxes paid by the Norton Company. The action of Schnackenberg was based upon an agreement entered into by the plaintiff and defendant which provided among other things "that Rowland Towle will assist Elmer J. Schnackenberg in the handling of the Norton Company claim against the State of Illinois and that the attorney fees arising therefrom shall be divided one-third to Mr. Towle and two-thirds to Mr. Schnackenberg and that Mr. Towle may handle said claim of record in the name of Hansen and Towle. It is further agreed that Mr. Schnackenberg will render all required service in handling this claim."

The defendant Towle admitted the fee sharing agreement but insisted that it was not only breached by plaintiff but that it was illegal and contrary to public policy, in that at the time this agreement was entered into plaintiff committed a breach of trust when he undertook, while in office to perform legal services for a client whose claim was adverse to the interest of the State of Illinois; that plaintiff, as a circuit judge, was disqualified and forbidden by statute from practicing law in any judicial circuit of this State. In sustaining this contention and reversing the decree of the trial court and the judgment of the appellate court which affirmed that decree, the supreme court, cited and referred to the Dickey and O'Hare cases, supra, commented on the fact that the meager remuneration of the judicial office was a definite factor in the Dickey case and stated that neither case

104

inferentially approved of the practice of law by supreme or circuit court judges.

In the course of its opinion, the Supreme Court said, omitting citations, p. 567: "While the circuit court of Cook County may be territorially apart, it is still but a unit in the State-wide judicial system of circuit courts. One commissioned as a circuit judge is not confined to performing his office within the territorial limits of the circuit where elected but is expressly authorized, and sometimes required to sit in other circuits within the State. When he does so he has all the powers of the regularly elected judges of the circuit. These powers of interchange among circuit court judges existed when section 10 was amended in 1895 and the legislature is thus presumed to have known that the commission issued to a circuit judge qualified him to sit as judge in any circuit within the State circuit court system. Since the same evils would attend the judge's practicing law in any circuit where he was qualified to preside, we conclude that the legislative inhibition was directed to the broad aspects of his commission and was not intended to apply only in the circuit court from which he was elected. Thus construed it is apparent that the decision in the O'Hare case is not presently determinative of the public policy with regard to judges practicing law and that, even in the absence of other considerations, appellee was disqualified from acting as attorney when the tax claim was prosecuted in the circuit court of Sangamon County." The court then referred to the fact that a judge of the municipal court of Chicago, is prohibited by statute (Ill. Rev. St. 1959, Chap. 37, par. 365) during his term of office from engaging either directly or indirectly in the practice of law, cited Evans v. Funk, 151 Ill. 650, 658, 38 N. E. 230, where a county judge was censured for representing a client in a will contest in the circuit court and called attention to

London & Lancashire Indemnity Co. of America v. Tindall, 377 Ill. 308, 36 N.E.2d 334, where the court expressed its displeasure at the name of a circuit judge appearing as of counsel on briefs filed in the Supreme Court.

The court in the Schnackenberg case expressly overruled any expressions in the Dickey and O'Hare opinions in conflict with their views expressed in the Schnackenberg opinion, stated that the court should not give judicial sanction to one whom the people have elected a judge with state wide power, to engage for personal gain in the partisan practice of law and held that the plaintiff was disqualified from acting as an attorney in the circuit court of Sangamon County and concluded that the agreement which had been entered into between Schnackenberg and Towle contemplated that Judge Schnackenberg, while holding the office of Judge of the circuit court, should perform legal services on behalf of a client; that such an agreement had a tendency to bring the administration of justice into suspicion and disrepute and held that it was contrary to the public policy of this state as established by the judicial decisions of the Supreme Court.

Dille v. Eads, 21 Ill.App.2d 301, 157 N.E.2d 813, was an appeal from a judgment rendered by the circuit court of Jersey County upon verdicts of a jury finding the defendant not guilty as to plaintiff's complaint and finding plaintiff guilty on the counterclaim. The county judge of Jersey County appeared on defendant's side of the trial table when the trial was commenced and actively participated in the trial of the cause in the circuit court.

In the appellate court it was insisted by counsel for the first time that plaintiff was prejudiced in the trial of the case because of the participation of the county judge as counsel for defendant. The appellate court of the Third District, stated that Schnackenberg v.

106

Towle, 4 Ill.2d 561, 123 N.E.2d 817, was a landmark in Illinois jurisprudence and had incited much discussion among the members of the bench and bar. The court referring to the Schnackenberg opinion then continued: (p. 305) "It has provoked speculation among the judges of the county courts of this State as to whether or not it bars a county judge from practicing law in the circuit courts and the county courts other than the county from which a particular judge is elected. In the past it has been common practice for county judges to practice law generally in all courts except the county court of the County from which they are elected. In fact, in the case at bar, it was disclosed on oral argument before this court, that the county judge here involved not only maintains an office as county judge but also is associated in a law office with one of counsel for defendant in the general practice of law. A careful analysis of the Schnackenberg case, supra, discloses that what is said therein with reference to the practice of law by circuit judges is equally applicable to county judges." Continuing the court said: (p. 307) "The same provision in Section 10 of the Attorneys and Counselors Act as it applies to circuit judges is also found in section 10 with reference to county judges. Since the Schnackenberg case was decided the legislature has provided unlimited interchange of judges in this state. Thus county judges may and do preside in county courts in counties other than the one in which they are elected. They are a part of a state wide judicial system of courts. In fact, in the case at bar, the county judge involved presided at terms of the circuit court both before and after the trial of this case. In addition and worthy of note as evidence of a legislative intent to make county judges part of the judicial unit, it is now provided that a portion of their salaries are payable by the State of Illinois."

107

The opinion in Dille v. Eads, supra, was filed on April 21, 1959, subsequently the court of its own motion deleted all reference therein to the propriety of a county judge practicing law inasmuch as that question was not presented to the trial court. In the instant case the question of the propriety of counsel for appellee to represent his client was raised by certain paragraphs of the amended answer filed by the defendants and which the chancellor struck on motion of appellees. While the deleted portions of the per curiam opinion in Dille v. Eads, supra, was irrelevant in that case we are in hearty agreement with the substance thereof and what was there said is applicable to the facts disclosed by this record.

■ In the instant case the record discloses that Judge Pucci filed the complaint, appeared for and represented the plaintiffs as their sole counsel throughout the hearing and it was not until November 9, 1959 that Watts C. Johnson entered his appearance in the circuit court as co-counsel for plaintiffs. At the time the complaint was filed he was county judge of Putnam County and continued to be throughout the litigation and is at this time discharging the duties of that office and we take judicial notice that he sits as a circuit judge in other counties of the State. (People ex rel. Spitzer v. County of LaSalle, 23 Ill. App.2d 139, 162 N.E.2d 433.) By their amendment to their answer which defendants filed on July 18, 1956 defendants insisted that Judge Pucci was barred from practicing law in the circuit court of Marshall County where this proceeding was pending, averred that the provisions of the mortgage providing for attorney fees is for the personal gain of Judge Pucci, that he was disqualified from acting as attorney for the plaintiff and charged that his activities as an attorney in this proceeding are contrary to the public policy of this State.

Upon the brief and argument of appellee and upon the supplemental and additional abstract of record filed in this court the name of Albert Pucci appears as one of the attorneys for appellees. Upon the oral argument of this case Judge Pucci was present and it was conceded that the amount tendered by defendants after this foreclosure proceeding was instituted was only insufficient in amount because the tender did not include adequate attorney fees.

■ Under the authorities the appearance of Judge Pucci and his active participation in the hearing of this case in the circuit court was improper and contrary to public policy. The chancellor erred in sustaining plaintiffs' motion to strike the portions of defendants' amended answer which set forth this defense.

The decree of the circuit court must therefore be reversed and this cause is remanded to the circuit court of Marshall County with directions to enter an order dismissing this complaint at the costs of the plaintiffs.

Reversed and remanded with directions.

SMITH, P. J., concurs.

McNEAL, J., concurs.